**Abbie HOFFMAN, Appellant,**

v.

**UNITED STATES, Appellee.**

·No. 4865.

District of Columbia Court of Appeals.

Argued May 19, 1969.

Decided Aug. 14, 1969.

---

4. D.C.Code 1967, § 22–105.

**568**

Gerald B. Lefcourt, New York City, with whom David M. Weitzman, Falls Church, Va., was on the brief, for appellant.

Mervyn Hamburg, Atty., Dept. of Justice, with whom David G. Bress, U. S. Atty., and Frank Q. Nebeker, Asst. U. S. Atty., were on the brief, for appellee.

Robert H. Kapp and Ralph J. Temple, Washington, D. C., counsel for American Civil Liberties Union Fund, filed a brief as amicus curiae urging reversal.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

HOOD, Chief Judge.

Appellant was convicted on a charge that he did "knowingly cast contempt upon the flag of the United States by publicly mutilating, defacing and defiling said flag" in violation of 18 U.S.C. § 700.[1]

The facts are not in dispute. Appellant was subpoenaed to testify before the House of Representatives Committee on Un-American Activities on October 3, 1968.[2] On that day he approached the Cannon House Office Building "playing a Yo-Yo" and wearing a "shirt that resembled the American flag."[3] Attached to his shirt were two buttons; one bore the slogan "Vote Pig Yippie in Sixty-Eight", and the other "Wallace for President, Stand Up for America." Before he entered the building, appellant was arrested for desecrating the flag.[4]

Appellant makes the following contentions: (1) The Statute on its face is unconstitutionally vague; (2) the Statute as applied abridges freedom of speech as guaranteed by the First Amendment; and

---

1. "(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

2. In his brief in this court appellant is described as a "civil rights advocate"; in the brief of the *amicus* appellant is called a "political activist"; and appellant in testifying referred to himself as "what people call a Hippie" and as a "revolutionary artist."

3. Appellant's testimony, transcript p. 26.

4. The term "flag of the United States" is defined by the Statute to include any representation of the flag "by which the average person seeing the same without deliberation may believe the same to represent the flag". 18 U.S.C. § 700(b).

(3) appellant's conduct was not in violation of the Statute.

## I

 A statute violates due process of law if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits;[5] but a statute is not required to be drawn with the precision of a chemical formula or a mathematical equation. Only a reasonable degree of certainty is required in order that fair notice is given to those of ordinary intelligence.[6] We hold that the Statute meets this test and we reject the claim that the Statute is unconstitutionally vague.

 To sustain his claim that the Statute is so vague and broad that it permits discriminatory enforcement, appellant says that he has worn a similar shirt at other times and other places without being arrested. His statement does not prove his argument. The "conscious exercise of some selectivity in enforcement" of a law is permissible,[7] and even lax enforcement of a law which permits other offenders to go free does not invalidate the law.[8]

## II

 .Appellant's contention that the Statute as applied abridges his freedom of speech guaranteed by the First Amendment appears to be his chief contention on this appeal. He argues that his conduct was "symbolic speech" and that no distinction should be made between symbolic and non-symbolic communication of ideas. We disagree. The First Amendment protects freedom of speech and not freedom of conduct. This is made clear in many of the Supreme Court decisions on the subject, too numerous to be cited. In one of its recent opinions, United States v. O'Brien, 391 U.S. 367, 376–377, 88 S.Ct. 1673, 1678–1679, 20 L.Ed.2d 672 (1968), the Court said:

> This Court has held that when "speech" and "nonspeech" elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. (Footnotes omitted.)[9]

 Surely the Government has a substantial, genuine and important interest in protecting the flag from public desecration by contemptuous conduct. We find the Statute to be a reasonable regulation limited to prohibiting certain defined acts of conduct, and it does not unnecessarily impinge on a citizen's right to protest.

---

5. Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966).

6. Ricks v. District of Columbia, 133 U.S. App.D.C. ——, 414 F.2d 1097 (decided December 23, 1968).

7. Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962).

8. Washington v. United States, 130 U.S. App.D.C. 374, 401 F.2d 915 (1968).

9. *See* Justice Fortas' statement dissenting in Street v. New York, 394 U.S. 576, 615, 89 S.Ct. 1354, 1378, 22 L.Ed.2d 572 (1969) that "action, even if clearly for serious protest purposes, is not entitled to the pervasive protection that is given to speech alone."

## III

■■ Appellant's final argument is that his conduct did not fall within the prohibition of the Statute. It is appellant's contention that the Statute requires public acts of physical destruction of the flag, and that his wearing of a shirt resembling the flag did not constitute such acts. We do not construe the Statute as narrowly as appellant urges.

The flag desecration Statute enumerates several forms of mistreating or abusing the flag which, by the very nature of the conduct, the offender is presumed to have intended to cast contempt upon the flag. The terms used in the Statute to describe the proscribed conduct; i. e., mutilating, defacing, defiling, burning or trampling, have clearly defined meanings in their ordinary usage, and each word connotes an objective act of desecration of the flag.

In the present case the information charges appellant with mutilating, defacing and defiling the flag. The term "defile" encompasses conduct which dishonors the flag as well as the generally more accepted use of making something filthy or dirty. The House of Representatives' report which accompanied the subject Statute defined the word "defile" to mean dishonor, and further stated that "[t]he bill *does* pro-

10. H.R.Rep.No.350, 90th Cong., 1st Sess. 3 (1967).

11. The following statement, taken from Justice Harlan's opinion may sound old-fashioned and out-of-date to some, but we think it worth repeating: "From the earliest periods in the history of the human race, banners, standards, and ensigns have been adopted as symbols of the power and history of the peoples who bore them. It is not, then, remarkable that the American people, acting through the legislative branch of the government, early in their history, prescribed a flag as symbolical of the existence and soverienty of the nation. Indeed, it would have been

hibit public acts of physical dishonor or destruction of the flag of the United States." [10] This interpretation was also reached in State v. Schlueter, 127 N.J.L. 496, 23 A.2d 249 (1941), which considered a flag desecration statute similar to the one presently before us. In *Schlueter*, the New Jersey Supreme Court stated:

> We understand that the statute, in making it a misdemeanor to deface or to defile the flag, used those words in their meaning of "dishonor". "Dishonor" is purposeful. The word imputes a lively sense of shaming or an equivalent acquiescent callousness.

We conclude that the use of the word "defile" in the subject Statute was intended to include public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or profane purpose. It is our opinion that the wearing of a shirt which resembles the American flag, under the circumstances of this case, is a physical act which defiles the flag in violation of 18 U.S.C. § 700. Such a use of the flag would "degrade and cheapen the flag in the estimation of the people, as well as to defeat the object of maintaining it as an emblem of national power and national honor." Halter v. Nebraska, 205 U.S. 34, 42, 27 S. Ct. 419, 422, 51 L.Ed. 696 (1907).[11]

Affirmed.

extraordinary if the government had started this country, upon its marvelous career without giving it a flag to be recognized as the emblem of the American Republic. For that flag every true American has not simply an appreciation, but a deep affection. No American, nor any foreign-born person who enjoys the privileges of American citizenship ever looks upon it without taking pride in the fact that he lives under this free government. Hence, it has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot."