Abbie **HOFFMAN**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 23514.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 18, 1970.

Decided March 29, 1971.

As Amended April 1, 1971.

Mr. Gerald B. Lefcourt, New York City, with whom Messrs. Terrence A. Sidley, Alexandria, Va., and Richard E. Crouch, Arlington, Va., were on the brief, for appellant. Mr. David M. Weitzman, Falls Church, Va., also entered an appearance for appellant.

Mr. John Ellsworth Stein, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Messrs. Robert H. Kapp and Ralph J. Temple, Washington, D. C., filed a brief on behalf of the American Civil Liberties Union Fund as amicus curiae.

Before FAHY, Senior Circuit Judge, and MacKINNON and ROBB, Circuit Judges.

FAHY, Senior Circuit Judge:

Appellant Hoffman was convicted in the Court of General Sessions on the charge he "knowingly cast contempt upon the flag of the United States by publicly mutilating, defacing and defiling" it, in violation of 18 U.S.C. § 700, entitled "Desecration of the flag of the United States." [1] After waiving his right to a trial by jury he was tried by the judge. He was sentenced to a $100 fine or imprisonment for thirty days. The District of Columbia Court of Appeals affirmed the conviction, Hoffman v. United States, 256 A.2d 567 (1969), and we allowed this appeal.[2]

The Government's case in chief consisted of a brief oral statement to the court by the Assistant United States Attorney embodying facts which the defense stipulated represented the basis for the charge. It appears that on the morning of October 3, 1968, in response to a subpoena to testify before the Committee on Un-American Activities of the House of Representatives, appellant, accompanied by a number of other persons, approached the Cannon Office Building where the Committee met.[3] Three Capitol Hill policemen observed appellant wearing a shirt which, while not actually a flag of the United States, resembled the flag sufficiently to come within the terms of the statute.[4] See note 1 supra. Pinned to the shirt were two buttons, one bearing the legend, "Wallace for President, Stand Up for America," the other saying, "Vote Pig Yippie in Sixty-Eight." The officers arrested appellant "after confirming their conclusion with their fellow officers" that the shirt "closely resembled the symbols and designs of the American flag."

At the conclusion of the Government's case as thus presented, the court denied appellant's motion to dismiss the charge for failure to prove a prima facie case under the statute. Appellant then testified in his defense. He said:

* * * I had a shirt that resembled the American flag. I wore the shirt because I was going before the Un-American Activities Committee of the House of Representatives, and I don't particularly consider that committee American in the tradition as I understand it, and I don't consider that House of Representatives in the tradition that I understand it, and I wore the shirt to show that we were in the tradition of the founding fathers of this country, and that that committee wasn't. That's why I wore it.[5]

At the conclusion of his defense appellant again moved for acquittal, on the ground the Government failed to prove guilt beyond a reasonable doubt, and also on the grounds the statute is unconstitutional as applied to his particular

---

1. The statute reads in its operative part as follows:

    (a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

    In subparagraph (b) the statute also provides that the term "flag of the United States" shall include any representation of the flag or its parts which an average person upon seeing may believe without deliberation to represent the flag.

2. This case was consolidated with No. 23784 for the appeal. We now decide only No. 23514.

3. Appellant was playing with a "Yo-Yo" at the time.

4. Several photographs and the torn shirt were placed in evidence by the Government as exhibits. These exhibits are not in the record before this court notwithstanding diligent efforts of our Clerk to locate them. They seem to have been lost.

5. It was also brought out that there was a struggle in connection with the arrest, in which appellant's shirt was torn and a Viet Cong flag was found to be painted on his back under the shirt. No significance has been attached to this episode in these proceedings under the statute.

conduct and, more generally, is unconstitutional on its face as an infringement of freedom of speech protected by the First Amendment.[6]

■ On this appeal appellant reasserts his constitutional claims. He also contends that his conduct in any event did not come within the condemnation of the statute. We agree with the latter position and accordingly do not reach the constitutional questions, though we have little doubt that the interest of the people in the flag of the United States enables Congress by appropriate legislation to protect it from desecration. *See* Opinions of Chief Justice Warren, Mr. Justice Black, Mr. Justice White, and Mr. Justice Fortas, in Street v. New York, 394 U.S. 576, *et seq.*, 89 S.Ct. 1354, 22 L.Ed.2d 572 (1969). These were dissenting opinions, but the majority opinion of the Court did not dispute the position of the dissenting Justices that a state interest exists in prohibiting desecration of the flag of the United States. *Cf.* Halter v. Nebraska, 205 U.S. 34, 27 S.Ct. 419, 51 L.Ed. 696 (1907).

■ The right of symbolic expression of opinion, not excluded from the protection of the First Amendment, is involved in this case. *See* Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); West Virginia State Bd. of Educ. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943); Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). It follows that in order for this statute to avoid possible conflict with the Amendment, the curtailment of expression goes no further than the language of the statute clearly requires. *See* United States v. Rumely, 345 U.S. 41, 45, 73 S.Ct. 543, 97 L.Ed. 770 (1953), and cases cited therein. The legislative history of the present statute demonstrates that Congress was aware of the problem and sought to avoid claims of infringement of the guarantees of the First Amendment by employing in the operative part of the statute language of limited and narrow meaning.

The Senate and House Committees on the Judiciary, in recommending passage of the legislation, filed Reports with their respective branches of Congress explaining why they deemed the Bill to avoid First Amendment invalidity. The Senate Report states:

> \* \* \* The bill does not prohibit speech, the communication of ideas, or political dissent or protest. The bill does not prescribe orthodox conduct or require affirmative action. The bill does prohibit public acts of physical dishonor or destruction of the flag of the United States. The language of the bill prohibits intentional, willful, not accidental or inadvertent public physical acts of desecration of the flag. Utterances are not proscribed. Specific examples of prohibited conduct under the bill would include casting contempt upon the flag by burning or tearing it and by spitting upon or otherwise dirtying it. There is nothing vague or uncertain about the terms used in the bill.

S. Rep. No. 1287, 90th Cong., 1st Sess. 3; *see* H. R. Rep. No. 350, 90th Cong., 1st Sess. 3, worded in like manner. Both Reports disclose that the statutory language, *see* note 1 *supra*, was suggested by Attorney General Ramsey Clark, should Congress decide to enact such legislation, as possibly avoiding First Amendment difficulty. He advised the Committees that the scope of protection of the Amendment, explained by Supreme Court decisions in such cases as West Virginia State Bd. of Educ. v. Barnette, *supra*, Stromberg v. California, *supra*, and Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct 1316, 12 L.Ed.2d 377 (1964), to which we now add Street v. New York, *supra*, is not so confined as

---

6. Counsel's arguments on the motions embodied both constitutional contentions.

might have been indicated by the earlier case of Halter v. Nebraska, *supra*.[7]

The words used in the statute and the accompanying legislative history thus preclude giving the statute a loose or expanded meaning. Both Committee Reports state, "There is nothing vague or uncertain about the terms used in the bill." Clearly disclosed is the congressional intent to condemn only physical mutilation, defacement, or defilement[8] of the flag, its "physical dishonor or destruction." *See* S.Rep.No.1287, *supra*, at 3; H.R.Rep. No. 350, *supra*, at 3. This is further emphasized by the statement in the Reports that the original bill had been amended so as to make it clear that the bill proscribes public burning of the flag along with other contemptuous "acts of destruction." S. Rep.No.1287, *supra*, at 1; H.R.Rep.No. 350, *supra*, at 1.

We find in this record no conduct of the sort which Congress condemned as criminal. The wearing of the shirt was not a physical mutilation, defacement, or defilement of the flag as those words are used in the statute;[9] nor were the two buttons pinned on the shirt.

Considering appellant's testimony as to his political views and ideology, we may well assume that the episode had a distinct flavor of sarcasm or mockery, with an added element of childishness in his playing with the Yo-Yo, but appellant's performance to his audience did not include the physical injury to the material of the shirt essential to be proved beyond a reasonable doubt to support a conviction of the crime defined in the statute.[10]

Reversed.

MacKINNON, Circuit Judge (concurring):

It was charged in the instant indictment that appellant

" * * * knowingly cast contempt upon the flag of the United States by publicly mutilating, defacing and defiling said flag * * *." in violation of 18 U.S.C. § 700.

---

7. In *Halter* the state statute there upheld prohibited the commercial use of the flag. The particular conduct involved was the advertising of beer by printing and painting a representation of the flag on beer bottles.

8. The House Report states that the words used in the statute have "well-defined, established" meanings and quotes Webster's Seventh New Collegiate Dictionary definitions of the words. Thus, "defile" is defined: "to make filthy: DIRTY * * * to make ceremonially unclean: SULLY, DISHONOR." *See* H.R.Rep. No. 350, *supra*, at 3–4.

9. Although we have assumed that the shirt came within the statutory definition of a flag of the United States, the plain fact is the shirt was not a flag of the United States. In Parker v. Morgan, 322 F.Supp. 585 (W.D.N.C.1971), a statutory three-judge federal court invalidated on constitutional grounds a North Carolina flag desecration statute because it sought to protect from desecration, as though flags of the United States, a great variety of representations of the flag which in fact were not flags of the United States. We mention this problem

because, when the injury is not to the flag itself but to a simulated design, it may well be that the proof of violation must be clearer than if the flag itself were desecrated. The average person naturally is more respectful in his use of the flag itself than of some of the many types of semblances of the flag.

10. We note also a somewhat troublesome problem in the case. The record does not clearly indicate on which ground of the charge the trial judge found appellant guilty. The transcript indicates that he probably found only that appellant defaced the flag by pinning the buttons on the shirt. The District of Columbia Court of Appeals, however, affirmed the conviction on the ground that the wearing of the shirt in the circumstances was a "physical act which defiles the flag." 256 A.2d at 570. It was not within the authority of the Court of Appeals to affirm the conviction on a factual basis different from that of the trial judge. Appellant does not raise the question thus suggested, and since we find neither mutilating, defacing, or defiling established, we dispose of the appeal without remand.

In this court there is no contention that there was any evidence of "mutilating," and since we are limited to the charges contained in the indictment, we have only to consider whether appellant knowingly cast contempt upon the flag by "defacing" or "defiling" it.

At trial no evidence was introduced that appellant engaged in any physical act directed against the flag except wearing a shirt that had been made commercially from parts of an American flag to which were pinned two political-type buttons reading: "Wallace for President, Stand Up for America" and "Vote Pig Yippie in Sixty-Eight." We are thus required to decide whether wearing the shirt under the circumstances here present constituted a contemptuous "defacing" or "defiling" of the flag.

The Government brief does not state exactly how it contends "contempt" was cast on the flag by any act of "defacing" or "defiling." Rather its theory seems to be that the manufactured shirt constituted a flag within the statute (which is correct) and that when it was worn by Hoffman "with buttons affixed to it mocking the American political system with full awareness of that resemblance" (of the shirt to the American flag) contempt was publicly cast on the flag and the statute was violated as charged in the indictment. I disagree with the theory that a contemptuous desecration of the flag can be found solely from such acts. It is noteworthy that the Government brief speaks broadly of acts that desecrate the flag but fails to point to any specific acts or circumstances from which the trier of facts would be warranted in finding that the flag (shirt) was contemptuously defaced or defiled. In fact, the pages of the brief which refer to Hoffman's acts (pp. 22–23) do not mention the word "defaced" and only once refer to "defiled" and then in the context that the flag is defiled by manufacturing it into a shirt. Hoffman did not make the shirt, he purchased it ready-made. Even if he had manufactured the shirt there would still

be absent any evidence that he thereby knowingly cast contempt upon the flag.

Thus, at most the Government is contending that there was a contemptuous "defacing and defiling" of the flag by appellant wearing it with the Wallace and Pig Yippie buttons pinned thereto; but merely wearing a manufactured shirt made from a flag with such buttons pinned thereto, without more, in my opinion falls short of violating the statute. While a flag (or shirt) might be technically defaced by pinning such buttons thereon, such conduct alone does not "cast contempt upon the flag." Such conduct is at most a breach of the rules and patriotic customs pertaining to the display and use of the flag of the United States of America which are codified in the United States Statutes for the use of such civilians or civilian groups or organizations as may not be required to conform to the regulations promulgated by one or more executive departments of the Government of the United States. These specifically provide that "No disregard should be shown to the flag of the United States of America * * * (g) The flag should never have placed upon it, nor on any part of it, nor attached to it any mark, insignia, letter, word, figure, design, picture, or drawing of any nature." 36 U.S.C. § 176(g), 56 Stat. 1076. Such regulation applies only to "the flag" (not to a shirt made from parts of the flag) and a breach of its terms imposes no penalty for its violation. If it is only a breach of custom to place a design upon a *flag* for which no penalty is imposed, it is certainly not to be inferred that Congress intended to make it a criminal offense to place a political-type button upon a *shirt resembling a flag*.

Clearly it is necessary to find something more than a breach of custom to convert such acts into a criminal offense. That extra requirement of the criminal statute is that there must be some proof that the accused acted with the requisite *intent* to knowingly cast contempt upon the flag. The prohibition against knowingly casting contempt

implicitly involves more intent of the accused than mere knowledge that the flag shirt he was wearing had political buttons pinned thereto, the same as a knowing conversion in Morissette v. United States, 342 U.S. 246, 270–271, 72 S.Ct. 240, 96 L.Ed. 288 (1952), was held to require more than mere knowledge that the defendant was taking the property into his possession. What is required is a showing of some intent by the accused to cast contempt upon the flag by publicly defacing or defiling it. The test in this respect is largely subjective and it turns on whether it can be inferred from the acts of the accused that he intended his acts to be contemptuous of the flag.

The conviction of Hoffman was sustained by the District of Columbia Court of Appeals upon the theory that wearing such buttons on the shirt under such circumstances amounted to a "defiling" of the flag. To "defile" means to make filthy, dirty, to make ceremoniously unclean, sully, or to dishonor. Clearly such offense is not proved by merely wearing the Wallace and Pig Yippie buttons on the shirt. Nor would the statute be violated by wearing a Nixon for President, or Humphrey for President button under similar circumstances as the Government contended. Such conduct might be a technical breach of the custom but something more is needed to demonstrate a knowing casting of contempt upon the flag. We have searched the record and the opinion of the District of Columbia Court of Appeals in vain for that additional evidence. We conclude, as appellant argued on this appeal, that the trial and appellate courts found these missing elements to be supplied by the appellant himself and by his public reputation. From this, we believe the other courts concluded that it was actually contemptuous of the flag for appellant to publicly wear the shirt made from it in the manner he did *because he was the person he was*. We have no doubt that there are many Americans who would come to the same conclusion because of

appellant's well known public image which is highly controversial. He has been associated with a number of causes which are unpopular with a great many people and which a great many people consider to be unpatriotic. However, I find no testimony in the record from which we would be justified in finding that his *actions* here were knowingly contemptuous of the flag.

The only direct evidence concerning appellant's intent was provided by the testimony of appellant himself. He indicated, in effect, that in the charade he was enacting he did not use the flag contemptuously but rather as a high symbol of America. His acts were intended by him to cast contempt upon the Committee not upon the flag. The buttons were intended to mock the Committee not the flag. To convey this message required that he be wrapped in the flag with all its majesty so as to indicate that the flag was supporting him against the Committee.

Such being the state of the record, the missing elements that he intended to cast contempt upon the flag cannot be supplied through judicial notice of his unsavory reputation in certain quarters for his opposition to certain traditional patriotic attitudes. He was, I believe, intentionally contemptuous of the Committee and used the shirt made out of the American flag as a prop in exhibiting that contempt, but proof that he demonstrated contempt for the Committee in that manner cannot be converted into proof that he knowingly cast contempt upon the American flag. My conclusion that the evidence here does not prove the charge laid in the indictment is thus based on the finding that there is an absence of any evidence proving that his words or actions were proof of any contempt for the flag (as represented by the shirt). I thus concur in the accompanying opinions of my colleagues except as to those remarks in Judge Fahy's opinion concerning First Amendment rights which I do not consider to be necessary to the decision.

ROBB, Circuit Judge (concurring):

As a criminal statute the Flag Desecration Act must be strictly construed; in particular, the word "defiling" must be narrowly defined. So construed, the word connotes only a physical mutilation, defacement or defilement of the flag.

It is apparent from the record that Hoffman set out to deride a congressional committee. To this end he played the part of a buffoon, using a yo-yo and a replica of the flag as properties for his act. In my opinion he did not treat the flag with proper respect but I cannot say that his conduct was covered by the narrow terms of the statute. Accordingly, I concur in the reversal.