**STATE of Iowa, Appellee,**

v.

**Kevin WATERMAN, Appellant.**

**No. 54643.**

Supreme Court of Iowa.

Oct. 13, 1971.

Rosenberger, Petersen, Conway & Belz, Muscatine, for appellant.

Richard C. Turner, Atty. Gen., Michael J. Laughlin, Asst. Atty. Gen., and Garry D. Woodward, Muscatine County Atty., for appellee.

STUART, Justice.

On March 31, 1970, defendant, eighteen-year old Kevin Waterman entered the lobby of the Hotel Muscatine wearing an American flag as a "poncho." He had cut a slit in the flag in order to put it over his head and it had torn further.

Defendant was an employee of the hotel and had gone there to cash a check. He went to the desk in the lobby for that purpose and had a short, verbal encounter there with the desk clerk, Mrs. Martineau. After cashing the check, the defendant went into another part of the hotel to visit with the person acting as his replacement.

He then left through the lobby still wearing the flag.

An information was filed charging defendant with violation of § 32.1, Code of Iowa. Trial was held before the Municipal Court of Muscatine, and the defendant was found guilty of the charge against him. This appeal followed.

■ I. Code § 32.1 provides: "Any person * * * who shall publicly mutilate, deface, defile or defy, trample upon, cast contempt upon, satirize, deride or burlesque, either by words or act [the] flag * * * of the United States, * * * shall be deemed guilty of a misdemeanor * * *."

Defendant argues that as the statute seeks to punish "words" as well as "acts" it is unconstitutional on its face as an abridgment of free speech even though defendant may have been charged with and convicted of acts rather than speech.

Although we have found no cases in which this point has been precisely raised, the courts have proceeded on the assumption that they can consider the constitutionality of a statute as it applies to "acts" separately, although "words" is also in the statute.

In Street v. New York (1969), 394 U.S. 576, 89 S.Ct. 1354, 22 L.Ed.2d 572, the United States Supreme Court reversed a conviction under a New York statute which makes it a misdemeanor "publicly [to] mutilate, deface, defile, or defy, trample upon, or cast contempt upon either by words or act [any flag of the United States]" (former Penal Law § 1425, subd. 16, par. d. now General Business Law, § 136, subd. d) because it was not clear whether the conviction was based solely on words or both words and acts or just defendant's acts. The court said: "In so holding, we reiterate that we have no occasion to pass upon the validity of this conviction insofar as it was sustained by the state courts on the basis that Street could

be punished for his burning of the flag, even though the burning was an act of protest." 394 U.S. at 594, 89 S.Ct. at 1366, 22 L.Ed.2d at 586.

In Hodsdon v. Buckson (D.Del.1970), 310 F.Supp. 528, 533, the court says: "Defendants here urge that the 'words' portion of the Delaware Statute is severable, and that insofar as the 'acts' portion is concerned, Street made no determination of its validity. This Court agrees. The crucial issue, therefore, is whether, although the state may not by a statute like the one here punish words defiant or contemptuous of the flag, it may nevertheless punish acts which convey identical ideas." See also People v. Radich (1970), 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30.

Although it would seem the provisions are severable and that considering "acts" separately from "words" would best effectuate the legislative intent, we need not turn our decision on their severability.

The United States Supreme Court in Street did not hold the New York statute which used "words" as well as "acts" invalid on its face. It turned its attention solely to the words defendant uttered and examined them in the light of four governmental interests that might have been "furthered by punishing [Street] for his words". It concluded: "In the circumstances of this case, we do not believe that any of these interests may constitutionally justify appellant's conviction under § 1425, subd. 16, par. d, for speaking as he did." 394 U.S. at 591, 89 S.Ct. at 1365, 22 L.Ed. 2d at 584.

We believe this indicates there are some *very limited* instances in which a person may be punished for his words without violating the First Amendment. The Supreme Court held the statute had been *unconstitutionally applied.*

We therefore conclude that the statute is not unconstitutional on its face even though it includes both "words and acts".

II. The instant case is clearly distinguishable from *Street* for although the information had been similarly couched in the language of the statute, the trial judge here delivered a written ruling in which he stated: "It should be clearly understood that the Court reaches this decision based entirely on the conduct of the Defendant without relying upon any words spoken by him at the time the offense occurred." Later in his ruling, the trial judge re-emphasized this point. We are therefore concerned here solely with the question of whether the state can constitutionally punish "acts" which desecrate and disgrace the flag.

This question was specifically reserved by the United States Supreme Court in *Street*, over dissents by Chief Justice Warren and Justices White, Black and Fortas. The dissenters were in agreement that the appellant's conviction had in fact rested on his action in burning the flag and that this was not a constitutionally protected action. The Chief Justice stated: "I believe that the States and the Federal Government do have the power to protect the flag from acts of desecration and disgrace. But because the Court has not met the issue, it would serve no purpose to delineate my reasons for this view. However, it is difficult for me to imagine that, had the Court faced this issue, it would have concluded otherwise." 394 U.S. at 605, 89 S. Ct. at 1372, 22 L.Ed.2d at 592.

Acts fall within the protection of the First Amendment only in those limited instances in which they are considered symbolic speech. In the case at bar, the defendant has not attempted to justify his conduct by claiming he was attempting to communicate ideas by his actions. Counsel forthrightly conceded on oral argument this case does not involve "symbolic speech", and that if the statute itself is constitutional, it could be applied to convict defendant. This is borne out by the record. The defendant himself testified on direct: "I really had no intentions whatsoever of anything by wearing this flag." And again on cross: "I had no purpose."

Even if it could be maintained, however, that defendant's acts were "symbolic speech" it does not follow that the same kind of freedom is afforded him by the First Amendment as is afforded to those who communicate ideas by pure speech.

In United States v. O'Brien (1968), 391 U.S. 367, 376–377, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679–680 the court stated:

"This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms. To characterize the quality of the governmental interest which must appear, the Court has employed a variety of descriptive terms: compelling; substantial; subordinating; paramount; cogent; strong. Whatever imprecision inheres in these terms, we think it clear that a government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." See also State v. Nelson (Iowa 1970) 178 N.W.2d 434, 439–441.

The government clearly has a substantial, genuine and important interest in protecting the flag from public desecration. That the state has a legitimate interest in preventing breaches of the peace which can result from reactions to any attempted defilement of the flag has long been recognized. As Justice Harlan stated in Halter v. Nebraska (1907), 205 U.S. 34, 41, 27 S. Ct. 419, 421, 51 L.Ed. 696, 701, "it has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who re-

vere it, have often been resented and sometimes punished on the spot."

The fact that in this case no breach of peace occurred is immaterial. The record discloses, nonetheless, that the government's interest in protecting the sensibilities of witnesses to the act who might be shocked by it is very real. As Mrs. Martineau put it, "I was more or less crushed." Alvina Fitzgerald, also a desk clerk at the hotel, testified: "It just made me sick." It is only a short step from this feeling of revulsion to an act of retribution.

Beyond this, however, the state has an interest in assuring the defendant, regardless of the impact of his actions upon others, showed proper respect to our national emblem.

Accordingly, we conclude that § 32.1 is constitutional in that the state can in the legitimate exercise of its police power punish for acts of flag desecration.

The New York Court of Appeals concluded that a conviction for an "act" of defilement infringed no constitutional guarantee under the previously quoted provisions of their statute in People v. Radich (1970), 26 N.Y.2d 114, 308 N.Y.S.2d 846, 257 N.E.2d 30. The defendant in that case was the proprietor of an art gallery which displayed "sculptures" fashioned by an artist as expressive of protest against the war in Viet Nam. The "sculptures" prominently incorporated the American flag, including constructions involving the wrapping of a phallic symbol with the flag and the use of the flag in the form of a human body hanging from a yellow noose.

In Hoffman v. United States (D.C.App. 1969), 256 A.2d 567, the court affirmed the conviction of the defendant who had worn a shirt that resembled the American flag. The prosecution was brought under 18 U. S.C. § 700 which unlike the Iowa and New York statute does not seemingly contemplate prosecution for verbal desecration. In view of the fact defendant was convicted solely for his act, it is persuasive authority for our conclusion that our own statute does not infringe upon First Amendment rights.

In People v. Cowgill (Super.Ct.1969), 274 Cal.App.2d Supp. 923, 78 Cal.Rptr. 853, the court affirmed the conviction of the defendant who had caused a flag of the United States to be cut and sewn into a vest and had then worn it publicly. The court interpreted the California desecration statute as applying only to "acts" and held there was a legitimate state interest in the protection of the flag even if the defendant's actions were regarded as "symbolic speech".

But see Hodsdon v. Buckson (D.Del. 1970), 310 F.Supp. 528, where a Delaware statute very similar to § 32.1 was struck down as constitutionally overbroad. The court found that the "acts" portion of the statute was severable from the "words" portion, but went on to hold that this part of the statute had a chilling effect on the exercise of First Amendment rights. "This Court takes judicial notice of the symbolic significance of flying the American flag. Like the conduct in Tinker [v. Des Moines Independent Community School District (1969), 393 U.S. 503, 89 S. Ct. 733, 21 L.Ed.2d 731], it is closely akin to 'pure speech,' and if a statute attempts to regulate it in furtherance of no interest other than suppression of expression, this Court has no choice but to strike that statute down." 310 F.Supp. at 533.

See the discussion of flag desecration as constitutionally protected symbolic speech in 56 Iowa L.Rev. 614.

In the instant case there is no claim of symbolic speech upon which *Hodsdon* turned. In any event we do not believe an apparently limitless variety of conduct can be justified under the rubric of "symbolic speech". Nor can we agree there are not other valid governmental interests involved here calling for reasonable regulation. Accordingly, we conclude in the words of the court in Hoffman v. United States, supra, 256 A.2d at 569, that our own statute

is "a reasonable regulation limited to prohibiting certain defined acts of conduct, and it does not unnecessarily impinge on a citizen's right to protest".

■ III. Defendant next contends § 32.1 is unconstitutionally vague. We cannot agree.

"[a] statute is not required to be drawn with the precision of a chemical formula or a mathematical equation. Only a reasonable degree of certainty is required in order that fair notice is given to those of ordinary intelligence." Hoffman v. United States, supra, 256 A.2d at 569.

We conclude as did the courts in the Hoffman case and in People v. Radich, supra, 26 N.Y.2d at 125, 308 N.Y.S.2d at 854, 257 N.E.2d at 36, that the statute under attack provides the requisite degree of certainty to provide men of ordinary intelligence with fair notice as to what conduct is proscribed.

■ IV. Defendant further argues that his conduct was not a punishable act under § 32.1 and that in any case there was no showing that he cast contempt upon the flag. We do not agree. The trial court was clearly justified in holding that wearing the flag as a poncho is an act which "defaces", "defiles", and "casts contempt" upon our national emblem. Hoffman v. United States, supra; People v. Cowgill, supra; People v. Radich, supra.

The defendant cites State v. Saionz (1969), 23 Ohio App.2d 79, 261 N.E.2d 135, where a conviction for "having otherwise cast contempt" upon the flag by wearing it as a cape was overturned under the ejusdem generis rule of statutory interpretation. The Ohio statute provided: "No person shall * * * publicly multilate, burn, destroy, defile, deface, trample upon, or otherwise cast contempt upon such flag * * *." The court in that case felt that all the previously enumerated acts related to physical destruction and the phrase "otherwise cast contempt" was necessarily so limited.

There are significant differences in the wordings of that statute and our own. Section 32.1 is not limited to acts of actual physical destruction. In addition to "cast contempt upon", it includes satirize, deride and burlesque which do not require acts of physical destruction. Consequently, the above case is not authority here for the proposition that defendant's acts were not covered by the statute.

■ V. Finally, we turn to defendant's contention that, "the Record is replete with uncontroverted testimony demonstrating that the defendant had no such *mens rea*". We do not believe the legislature intended this statute to require an element of specific intent. See State v. Nelson (Iowa, 1970), 178 N.W.2d 434, 439. It seeks to punish acts intentionally done which have the effect of desecrating our flag. The person's reason for doing such act is of no importance, except in those instances where the act is in the area of symbolic speech.

"[E]ven if we assume that defendant had an honest political intent * * * or that he had no intent at all, that element is not essential to a conviction of violating a statute which is *malum prohibitum*. (Citations)" People v. Radich, supra, 26 N.Y. 2d at 125, 308 N.Y.S.2d at 854, 257 N.E.2d at 36. See also Hoffman v. United States, supra, 256 A.2d 567, 570.

As we find no reversible error, the case is affirmed.

Affirmed.

All Justices concur, except BECKER, RAWLINGS, LeGRAND and REYNOLDSON, JJ., who concur specially.

BECKER, Justice (concurring specially).

I concur in Division I to IV and the results. While I have doubts as to the constitutionality of the statute, I accept the majority's reasoning on the point. For cases pointing the other way see Street v. New York, 394 U.S. 576, 89 S.Ct. 1354, 22

L.Ed.2d 572; Long Island Vietnam Moratorium Committee v. Cahn, 437 F.2d 344 (2 Cir. 1970). Also the evidence is sufficient to justify a finding of an intentional violation. I cannot concur in Division V holding intent to violate the statute is unnecessary.

Mr. Justice Jackson wrote at length on the problem of intent as a necessary element of crime in Morissette v. United States, 342 U.S. 246, 250, 251, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1952), and said in part:

> "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. A relation between some mental element and punishment for a harmful act is almost as instinctive as the child's familiar exculpatory 'But I didn't mean to,' and has afforded the rational basis for a tardy and unfinished substitution of deterrence and reformation in place of retaliation and vengeance as the motivation for public prosecution. Unqualified acceptance of this doctrine by English common law in the Eighteenth Century was indicated by Blackstone's sweeping statement that to constitute any crime there must first be a 'vicious will.' Common-law commentators of the Nineteenth Century early pronounced the same principle, although a few exceptions not relevant to our present problem came to be recognized."

This court used similar reasoning in State v. Schultz, 242 Iowa 1328, 1331, 1334, 50 N.W.2d 9, 11, when we said:

> "Whether intent is a necessary element of a statutory crime is a matter of statutory construction. We said, in State v. Dunn, 202 Iowa 1188, 1189, 211 N.W. 850, 851: 'Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be

determined as a matter of construction from the language of the act, in connection with its manifest purpose and design.' * * *.

> "It was incumbent upon the State to prove that the sale to the minor was made with the knowledge, or by the direction, sanction or approval of the defendant. The record is barren of any such showing. We are not disposed to extend further the doctrine of guilt without intent or knowledge."

It seems to me to be of particular importance in this type case that the finder of fact, judge or jury, be required to find intent to desecrate the flag. The precise question considered here was analyzed in depth by the Supreme Court of Washington. State v. Turner, 474 P.2d 91, 95, 96 (Wash.1970). The case is well worth reading. A short quotation is apropos:

> "The statute in question does, as we have noted, employ language implying that some evil intent or purpose must be shown. Words such as deface, defile, defy or cast contempt upon strongly imply that the described conduct shall be held criminally actionable only when the interdicted conduct is done with an evil design or purpose. If this were not so, the legislature could readily have said otherwise.

> "The idea that there must be an intent to desecrate and hold up to contempt is supported by an absence until quite recently of national legislation on the subject. In 1968, the Congress broadened the application of an existing District of Columbia statute into a national law. Public Law 90–381, of § 1; 82 Stat. 291, 18 U.S.C. § 700 (1968). This statute, unlike that under inquiry here (RCW 9.-86.030), makes it a criminal offense *knowingly* to cast contempt upon the flag either by publicly mutilating, defacing, defiling, burning or trampling upon it. * * *

> "Accordingly, unless the statute expressly eliminates the element of intent

or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohibita, the ingredients of intent, design and purpose should be deemed indispensable to a proof of guilt. To hold otherwise, would make anyone criminally liable who accidentally burned or walked upon the flag in public or unintentionally or accidentally committed some other act toward it which, if intent were present, would clearly constitute a defacing or defilement or a holding up to contempt."

See also Morissette v. United States, supra; West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628; City of Seattle v. Jones, 3 Wash.App. 431, 475 P.2d 790 (1970); State v. Hennings, 3 Wash.App. 483, 475 P.2d 926 (1970).

All of the above cases strongly militate against this court's present gratuitous elimination of the element of intent from flag desecration cases. In the words of our prior case we should "not be disposed to extend further the doctrine of guilt without intent or knowledge."

RAWLINGS, LeGRAND and REYNOLDSON, JJ., join in this special concurrence.