**STATE of Iowa, Appellee,**

v.

**Martin Paul KOOL, Appellant.**

**No. 272.**

Supreme Court of Iowa.

Nov. 14, 1973.

Korf, Diehl, Clayton & Cleverley and R. Eugene Knopf, Newton, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Bruce J. Nuzum, Jasper County Atty., for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, UHLENHOPP and McCORMICK, JJ.

UHLENHOPP, Justice.

The critical issue in this appeal is whether defendant's manner of displaying the American flag could reasonably be expected to produce a breach of the peace.

Defendant was charged with desecration of the flag in violation of § 32.1 of the Code. The parties stipulated in writing:

(a) That the defendant, on or about Christmas of 1969, hung an eight inch in diameter peace symbol made of cardboard and wrapped with tin foil in the front window of his home.

(b) That the defendant, on or about Flag Day, June 14, 1970, hung an eighteen inch by thirteen inch plastic replica of the United States flag in the front window of his home.

(c) That the defendant hung the above mentioned replica of the United States flag behind the peace symbol, which was still in the front window of his home.

(d) That the said peace symbol was lying against the front of the window, and the replica of the United States flag was about one-half inch to an inch behind the peace symbol. The peace symbol was not touching the plastic flag, nor was it attached to the flag. A copy of a photograph which appeared in the Newton Daily News, Newton, Iowa shows the United States flag and peace symbol as the same appeared on the day the defendant was charged with the violation under Section 32.1 of the 1971 Code of Iowa, said copy of photograph being attached hereto, marked Exhibit "A", and by this reference made a part hereof.

(e) That the defendant hung the United States flag in an upside down position as an expression, or to signify a signal of distress, that distress being the involvement of the United States in the Vietnam war. The defendant did not intend to desecrate the United States flag

or hold the United States flag up to ridicule. The defendant did not mutilate the United States flag.

(f) There were no riots or violence as a result of the defendant's action. The defendant's actions were an expression of speech signaling a distress, and were intended as such.

The picture attached to the written stipulation showed the peace symbol and replica of the flag as they are described in the stipulation, but in the picture the symbol appears to be on the flag rather than separate from it.

By agreement, the parties tried the case without a jury. The trial court found defendant guilty and sentenced him. He appealed.

Defendant makes three principal contentions: (1) the statute is invalid for vagueness, (2) defendant did not in fact desecrate the flag, and (3) if the statute is applied to this situation, defendant will be denied free speech.

■ I. *Vagueness.* We reject defendant's contention that the statute under which he was convicted is unconstitutionally vague. We held otherwise in State v. Waterman, 190 N.W.2d 809, 813 (Iowa). We said there, "Defendant next contends § 32.1 is unconstitutionally vague. We cannot agree. . . . [T]he statute under attack provides the requisite degree of certainty to provide men of ordinary intelligence with fair notice as to what conduct is proscribed."

II. *Desecration in Fact?* Defendant's contention that he did not in fact desecrate the flag requires us to consider the language of § 32.1. Section 32.3 of the same chapter defines "flag" broadly to include a replica such as we have here. Section 32.1 itself makes three main activities crimes: first, to place marks upon flags or to expose to view a flag on which a mark has been placed; second, to use a flag on an article for advertising or decoration; and third, publicly to "mutilate, deface, defile or defy,

trample upon, cast contempt upon, satirize, deride or burlesque" the flag or to place the flag "upon the ground or where the same may be trod upon. . . ."

Most of the proscriptions in § 32.1 are not applicable to the present facts. But the Attorney General claims defendant did "defile" and "cast contempt upon" the flag. "Defile" means "to make filthy", "to corrupt the purity or perfection of", "to rob of chastity", or "to make ceremonially unclean". "Contempt" means "despising" or "having no respect, concern, or regard for something". Webster's Third New International Dictionary (1969). We construe statutory words according to the approved usage of the language. Code 1973, § 4.1(2). But "[s]tatutes defining crimes are to be strictly construed and not to be held to include charges plainly without the fair scope and intendment of the language of the statute, though within its reason and policy, and in the event of doubts they are to be resolved in favor of the accused." State v. Nelson, 178 N.W.2d 434, 437 (Iowa).

This statute may be violated without specific intent. State v. Waterman, 190 N.W.2d 809 (Iowa). Nonetheless, we think a substantial question is presented as to whether a trier of fact could reasonably find defendant "defiled" or "cast contempt upon" the flag, especially in view of the stipulation that defendant hung the flag as he did "to signify a signal of distress" and the further stipulation that "defendant did not intend to desecrate the United States flag or hold the United States flag up to ridicule." The facts in our previous decisions were considerably stronger for the State, and in those cases defilement of or contempt for the flag could be reasonably inferred from the defendants' acts. State v. Waterman, supra ("Kevin Waterman entered the lobby of the Hotel Muscatine wearing an American flag as a 'poncho'. He had cut a slit in the flag in order to put it over his head and it had torn further."); State v. Farrell, 209 N.W.2d 103, 104 (Iowa) ("Defendant's assemblage ultimately congregated in the Quadrangle dormitory courtyard. Shortly thereafter a United States flag was handed to defendant, which she held while others ignited and burned it.").

We have concluded, however, to leave open the question of whether the fact trier could find defendant did actually violate the statute, for we find decision of that issue unnecessary to disposition of the case. Our answer to defendant's third contention decides the appeal.

III. *Free Speech.* Freedom of speech is protected by § 7 of Article I of the Iowa Constitution ("No law shall be passed to restrain or abridge the liberty of speech, or of the press.") and by Amendment 1 to the United States Constitution ("Congress shall make no law . . . abridging the freedom of speech, or of the press"). This part of Amendment 1 was held applicable to the States, through Amendment 14, in De Jonge v. Oregon, 299 U.S. 353, 57 S.Ct. 255, 81 L.Ed. 278.

Defendant's conduct here constituted symbolic speech. The parties stipulated that defendant did what he did "as an expression, or to signify a signal of distress," and "defendant's actions were an expression of speech signaling a distress, and were intended as such." Can the statute be constitutionally applied to prohibit the symbolic speech which defendant employed? We think not.

Freedom of expression is a vital right in an open society. We cannot lose sight of that basic constitutional principle although in a given case we have an unconventional display of the flag which disturbs our sensibilities. As Justice Jackson said for the Court in West Virginia State Board of Education v. Barnette, 319 U.S. 624, 641–642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628, 1639:

The case is made difficult not because the principles of its decision are obscure but because the flag involved is our own.

Nevertheless, we apply the limitations of the Constitution with no fear that freedom to be intellectually and spiritually diverse or even contrary will disintegrate the social organization. . . . But freedom to differ is not limited to things that do not matter much. That would be a mere shadow of freedom. The test of its substance is the right to differ as to things that touch the heart of the existing order.

If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein.

■ Nevertheless, freedom of symbolic speech is not absolute. If a statute which curtails such freedom is otherwise within a State's constitutional power, if the statute is unrelated to the suppression of free expression, if the restriction furthers an important or substantial governmental interest, and if the incidental restriction is no greater than essential to further that interest, then the curtailment is valid. United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672.

■ The State insists that § 32.1 of the Code, applied to this case, meets the test. The important or substantial governmental interest here, according to the State, is prevention of a threatened breach of the peace. That interest, *if it actually exists,* is a sufficient one. State v. Farrell, 209 N.W.2d 103 (Iowa) (actual breach of peace not essential to uphold a conviction).

■ The ultimate issue, therefore, is whether that interest does actually exist here. *Was* a breach of the peace likely? The stipulation does not state that violence was planned or probable. Therefore in order to uphold the conviction, we must say that the display itself of the peace symbol and upside-down flag made violence likely. We cannot say that.

This is not to say we are completely sure that no one would be violent. Someone in Newton might be so intemperate as to disrupt the peace because of this display. But if absolute assurance of tranquility is required, we may as well forget about free speech. Under such a requirement, the only "free" speech would consist of platitudes. That kind of speech does not need constitutional protection.

In essence, our task in a given case, and in this case, is to weigh the likelihood of violence against the right of free expression. The danger is that we will overuse "likelihood of violence" in order to be on the safe side. But the framers of the constitutional guaranties must have known they were taking some risk when they inserted the free speech clauses, for many utterances of unpopular ideas are fraught with the possibility of retaliatory action. Tinker v. Des Moines Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, 739 ("But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression. Any departure from absolute regimentation may cause trouble."). We must not water down the guaranties by undifferentiated fear or apprehension. For our part, we will uphold incursions upon symbolic expression on the basis of probable violence only when we are convinced that violence really is probable.

We hold that likelihood of violence does not sufficiently appear here. The statute is not unconstitutional, but it cannot be constitutionally applied to these facts. Cf. People v. Vaughan, 514 P.2d 1318 (Colo.).

Reversed.

MOORE, C. J., and MASON, J., concur.

RAWLINGS, J., concurs in result.

McCORMICK, J., concurs specially.

McCORMICK, Justice (concurring specially).

I. I do not believe defendant's use of the flag could be found to be flag desecration. He did nothing to defile or cast contempt on the flag. Rather he turned it upside down to symbolize what he believed was an inversion of national ideals caused by Vietnam War policy. It was his way of accusing the makers of that policy of not being true to the flag. Under the stipulated facts his conduct was the antithesis of flag desecration.

II. I also adhere to the views in my dissent in State v. Farrell, 209 N.W.2d 103 (Iowa 1973). Here as there I do not believe the State demonstrated any legitimate governmental interest sufficient to override defendant's right of free speech. I agree with the majority in the present case that the First Amendment will not permit use of a flag desecration statute to suppress dissent or to compel mindless conformity.

I concur in the result.