The State of Ohio, Appellee, *v.* Saionz, Appellant.

(No. 6519—Decided October 29, 1969.)

*Mr. Louis R. Young,* director of law, and *Mr. Eddie M. Cole,* for appellee.

*Messrs. Gallon & Callender,* for appellant.

Potter, J. This is an appeal from a conviction in the Toledo Municipal Court for an alleged violation of R. C. 2921.05. The affidavit reads as follows:

"Before me, C. J. Gray, Deputy, Clerk of the Toledo Municipal Court, Lucas County, Ohio, personally came J. Billis, TPD who being duly sworn according to law, de-

poses and says that on or about the 17 day of April, A. D. 1968 at the said County, one John Edward Saionz, 516 W. Delaware, Toledo, Ohio, did unlawfully, publicly and contemptuously cast contempt upon a flag of the United States of America by publicly wearing same as a cape in the 2500 block of Collingwood Blvd., Toledo, Ohio, on date above, all contrary to ORC 2921.05 as amended 24 October 1967, and further deponent says not, contrary to the form of the Statutes in such cases made and provided, and against the peace and dignity of the State of Ohio. X John Billis Affiant. Sworn to and subscribed before me this 7 day of May, A. D. 1968. Raymond J. Block, Clerk. C. J. Gray, Deputy Clerk.''

The cause was tried by the court. The record indicates that a United States flag was left at defendant's apartment. Someone other than the defendant had cut a slit in it, made burn marks, and attached a peace button thereon. The defendant was arrested in a grocery store wearing this flag as a cape with his head inserted through the slit. The defendant immediately, on request by the officer, removed the flag.

The pertinent part of the statute, the subject of the affidavit, is set forth below:

''No person shall * * * publicly mutilate, burn, destroy, defile, deface, trample upon, or otherwise cast contempt upon such flag, standard, color, or ensign.''

Every state in the Union has enacted a statute with similar wording. These statutes have been declared constitutional. See *Halter* v. *Nebraska,* 205 U. S. 34. However, in the recent case of *Street* v. *New York,* 394 U. S. 576, reversing New York Court of Appeals, 20 N. Y. 2d 231, 229 N. E. 2d 187, the court held that the defendant could not be constitutionally punished under a New York statute for his speech in reference to the flag. See page 594 as follows:

''Since appellant could not constitutionally be punished under Section 1425, subd. 16, par. d, for his speech, and since we have found that he may have been so punished, his conviction cannot be permitted to stand. * * *

"* * * Nevertheless, we are unable to sustain a conviction that may have rested on a form of expression, however distasteful, which the Constitution tolerates and protects."

Only recently has the federal government enacted a federal law pertaining to the desecration of the flag. It is found in Section 700, Title 18, U. S. Code, and is set forth in part below:

"(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

The crux of the instant case is whether the wearing of the flag as a cape falls within the wording of the affidavit and that portion of the Ohio statute relied upon by the state. The state did not charge the defendant with exposing a flag upon which is attached or appended a word, figure, mark, or design. This is a distinct and separate offense. It is not related to that part of the statute which has reference to "otherwise cast contempt." It is a clear principle of law that a person cannot be charged for one crime and convicted of an entirely different offense, even where the two separate offenses are defined and described in one statute. *Barber* v. *State,* 39 Ohio St. 660 (considering two separate offenses under Revised Statute 6820, the predecessor of R. C. 2901.23).

In order to determine whether defendant's conduct violates the invoked portion of the statute, the generic words "otherwise cast contempt" must be interpreted. Customary rules of interpretation are applicable.

First, this being a penal provision, the statute is strictly construed. See R. C. 1.11, Liberal Construction of Remedial Laws:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws; but this section does not require a liberal construc-

tion of laws affecting personal liberty, relating to amercement, or of penal nature."

Case and text authority of like position are *Mentor* v. *Giordano*, 9 Ohio St. 2d 140; 15 Ohio Jurisprudence 2d 253, Criminal Law, Section 20; and 2 Opinions of the Attorney General (1915) 1721, No. 816. This opinion is specifically on the General Code sections pertaining to the flag.

This court, through Judge Fess, has held that the rule of strict construction applies to a misdemeanor. See *Toledo* v. *Burks*, 100 Ohio App. 127, at page 131:

"* * * Likewise, a penal statute prescribing a misdemeanor is to be strictly construed against the state, and all doubts in the interpretation of such a statute are to be resolved in favor of the accused. *State* v. *Conley*, 147 Ohio St. 351, 71 N. E. 2d 275. The rule of strict construction is thus applied to ordinances and statutes defining misdemeanors as well as felonies."

Coming to the meaning of the generic words "otherwise cast contempt," we are aided by familiar maxims of statutory interpretations. They are *"nosciture a nociis"* and *"ejusdem generis."*

The rules hold, in effect, that general words are given the restricted meaning of the specific words which precede them. See *State* v. *Aspell*, 10 Ohio St. 2d. 1, paragraph two of the syllabus below:

"2. Under the rule of *ejusdem generis*, where in a statute terms are first used which are confined to a particular class of objects having well-known and definite features and characteristics, and then afterwards a term having perhaps a broader significance is conjoined, such latter term is, as indicative of legislative intent, to be considered as embracing only things of a similar character as those comprehended by the preceding limited and confined terms."

See, also, Ohio Words and Phrases, at page 397, where the word "otherwise" is defined:

"Words ejusdem generis, as 'any other,' 'or other' or 'or otherwise,' are restricted to matters similar to those previously enumerated."

The words "otherwise cast contempt," therefore,

mean acts of physical destruction or abuse similar in nature to acts of mutilating, burning, destroying, defiling, defacing or trampling upon. This is the rationale of the recent amendment to R. C. 2921.05 by the General Assembly which added the specific words "burn, destroy," and "trample upon." The conclusion that the act of "otherwise cast contempt" must be a definable one is required if we are to elude the "vice of vagueness," *Lanzetta* v. *New Jersey*, 306 U. S. 451; *Watkins* v. *United States*, 354 U. S. 178, avoid contravening the First Amendment, and if we are to prevent the trier of a cause from creating his own standards in each case, *Herndon* v. *Lowry, Sheriff*, 301 U. S. 242; *United States* v. *Cohen Grocery Co.*, 255 U. S. 81.

Such an interpretation is also consistent with the recent federal statute which equates "casts contempt" with "publicly mutilating, defacing, defiling, burning or trampling upon," and avoids the dangers considered by the congressional committees which studied the act, see 2 U. S. Code Congressional and Administrative News, 1968, 2507, and in particular Senate Report Number 1287, at page 2509, from which we quote:

"The committee believes that H. R. 10480 will successfully withstand all constitutional challenges to which it may be subjected in the courts. The bill does not prohibit speech, the communication of ideas, or political dissent or protest. The bill does not prescribe orthodox conduct or require affirmative action. The bill does prohibit public acts of physical dishonor or destruction of the flag of the United States. The language of the bill prohibits intentional, willful, not accidental or inadvertent public physical acts of desecration of the flag. Utterances are not proscribed. Specific examples of prohibited conduct under the bill would include casting contempt upon the flag by burning or tearing it and by spitting upon or otherwise dirtying it. There is nothing vague or uncertain about the terms used in the bill."

See, also, letter by Ramsey Clark, Attorney General, to Senator James O. Eastland, Chairman of the Senate Judiciary Committee, at page 2511, from which we quote:

"Particular care should be exercised to avoid infringe-

ment of free speech. To make it a crime if one 'defies' or 'casts contempt * * * either by word or act' upon the national flag is to risk invalidation. Such language reaches toward conduct which may be protected by first amendment guarantees. The courts have been insistent on guarding against sanctions which reach the protected expression of ideas and also have struck down on grounds of vagueness provisions which are so broad that they might include protected speech along with conduct that could constitutionally be penalized.

"These issues were not involved in *Halter* v. *Nebraska*, 205 U. S. 34, 27 S. Ct. 419, 51 L. Ed. 696 (1907) which upheld the power of a State to enact legislation with respect to the flag, but are suggested by more recent decisions of the courts dealing with other conduct involving manifestations of respect or disrespect for the flag and the system of government it represents. See, e. g., *West Virginia State Board of Education* v. *Barnette*, 319 U. S. 624, 63 S. Ct. 1178, 87 L. Ed. 1628 (1943); *Stromberg* v. *California*, 283 U. S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931); *Baggett* v. *Bullitt*, 377 U. S. 360, 84 S. Ct. 1316, 12 L. Ed. 2d 377 (1964)."

Defendant's conduct was most disgusting and reprehensible. Chief Justice Smith's words in dissenting in *Johnson* v. *State*, 163 S. W. 2d 153, are apropos:

"Little more need be said regarding appellant, his conduct, and his conviction. If ignorance were a legal crime the judgment would be just. * * *"

There are no judge-made crimes in Ohio. The state can punish only for acts which are prohibited by the General Assembly. The state's affidavit did not charge an offense. An affidavit filed in a criminal case is not subject to amendment. See *State* v. *Jennings*, 112 Ohio App. 455; *Toledo* v. *Harris*, 56 Ohio App. 251.

An affidavit is the product of the affiant, but even as to an indictment the remedial statutes do not contemplate the making of a good indictment out of one which states no offense. A judgment of conviction based on an indictment not charging an offense is void and may be attacked on direct appeal or collaterally. *State* v. *Wozniak*, 172 Ohio St.

517; *State* v. *Cimpritz,* 158 Ohio St. 490; *State* v. *Presler,* 112 Ohio App. 437; *Horsley* v. *Alvis, Warden,* 281 F. 2d 440.

This is a hard case. It is our flag, too, but our love for it will not permit us to also waive the rules.

The judgment of the Toledo Municipal Court is reversed at costs of plaintiff, appellee herein, defendant is ordered discharged, and the cause is remanded to the Toledo Municipal Court for execution for costs.

*Judgment reversed.*

Brown, P. J., concurs.

Straub, J., dissenting. The affidavit charged that the defendant did unlawfully, publicly and contemptuously cast contempt upon the flag of the United States by publicly wearing same as a cape contrary to R. C. 2921.05. That section of law is captioned in the Code, ''Desecrating flag of this state or the United States.'' After prohibiting certain specific acts of desecrating the flag, the section provides further that no person shall publicly ''otherwise cast contempt upon such flag.''

There is no dispute in the facts. A patriotic person observed the defendant wearing the flag as a cape in public, notified the police, and the defendant was thereupon apprehended. The flag is approximately 60 by 32 inches. In the center of the flag a slit about 12 inches long had been cut, through which slit, the defendant testified, he struck his head to wear the flag as a cape. The defendant testified further that there were two holes approximately 1½ inches in diameter burned in the flag, one burning out a star and the other burning a hole in a white stripe. The defendant further testified that attached to the flag was a metal shield or design which he identified as a peace emblem. The arresting officer further identified the metal design as an emblem meaning, ''Ban the Bomb.'' The defendant testified further that the reason he wore that flag as a cape was a form of protest against American policy in Vietnam, the American policy on civil rights and all the other things that are wrong with this country.

It is the firm conviction of this dissenting member that the affidavit fully and completely charged the defendant with a crime under the provisions of the statute and that the testimony of the defendant established his guilt beyond any doubt.

Desecration statutes are passed by the legislatures of the various states to prohibit the improper use of and disrespect for the flag, which acts are likely to produce a breach of the peace. It was the intent of the Ohio Legislature by enacting R. C. 2921.05 to prohibit every public desecration or insult of the flag. This intent is manifest by the general prohibition in the statute, "No person shall * * * publicly * * * otherwise cast contempt upon the flag." The majority opinion does not hold that R. C. 2921.05 is unconstitutional for the reason that the general prohibition quoted above is vague or indefinite. In effect, the majority opinion holds that the public wearing of that flag in its mutilated condition by the defendant as a cape for the purpose of protest against the policies of the United States is not an offense under R. C. 2921.05. The words of the statute, "otherwise cast contempt upon the flag," are clear, definite and unambiguous. The cardinal rule of construction of statutes by the courts requires that the words of the statute be constructed in their usual ordinary, well-understood meaning to fully effectuate the intention of the Legislature. Here the unquestionable intention of the Legislature was to prohibit and forbid any and all acts of desecration of and contempt for the flag, and the words of the statute quoted above definitely and concisely state that intention.

In the trial court the defendant was at all times represented by counsel well experienced in criminal law. At no time in the trial court, either before, during or after the trial, was there any oral or written objection or any motion made by the defendant attacking the sufficiency or validity of the affidavit. In the motion for a new trial in Municipal Court filed by the defendant there was no attack on the sufficiency or validity of the affidavit. The judgment of guilty was then appealed to this court, and there is no assignment of error by the defendant in this court at-

tacking the sufficiency or validity of the affidavit. In the oral hearing in this court there was not one word by counsel for the defendant challenging or attacking the sufficiency or validity of the affidavit.

R. C. 2941.29, captioned, "Time for objecting to defect in indictment," reads as follows:

"No indictment or information shall be quashed, set aside, or dismissed, or motion to quash be sustained, or any motion for delay of sentence for the purpose of review be granted, *nor shall any conviction be set aside or reversed on account of any defect in form or substance of the indictment or information, unless* the *objection* to such indictment or information, specifically stating the defect claimed, *is made prior to the commencement of the trial, or* at *such time thereafter as the court permits.*" (Emphasis ours.)

Further, R. C. 2945.83 reads, in part, as follows:

"No motion for a new trial shall be granted or verdict set aside, *nor shall any judgment of conviction be reversed in any court because of*:

"(A) An inaccuracy or imperfection in the indictment, information, or warrant, provided that the charge is sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him;

"* * *

"(E) *Any other cause unless* it *appears affirmatively* from the record that the *accused was prejudiced thereby or was prevented from having a fair trial.*" (Emphasis ours.)

Obviously, counsel representing the defendant was of the opinion that the affidavit sufficiently charged the defendant with a crime under R. C. 2921.05, as no attack was made on the affidavit either in the trial court or in this court. Further, there is no claim that because of the affidavit the defendant was prejudiced in any way or that the defendant was prevented in any way from having a fair trial.

The majority opinion cites *State* v. *Wozniak,* 172 Ohio St. 517, as the authority that an indictment or an affidavit which does not state an offense is void. This member con-

curs in that rule of law. However, in *Wozniak* the defendant had filed a motion to dismiss the indictment in the trial court, which motion the trial court overruled. Chief Justice Taft, in *Wozniak* on page 523, precisely states the issue as follows:

"We are not confronted with a situation *where a defendant,* in the hope that he could secure a favorable verdict that would bar further prosecution for the crime sought to be charged, *has not attacked the sufficiency of the indictment* before submission of the cause to the jury; and we *therefore express no opinion as to whether such defendant might be estopped* from *thereafter contending that an unfavorable verdict against him should be set aside. Cf. State* v. *Glaros* (1960), 170 Ohio St. 471, 475, 166 N. E. 2d 379, 382, 383." (Emphasis ours.)

Further in *State* v. *Glaros,* 170 Ohio St. 471, on the same issue, in the opinion by Chief Justice Taft on page 475, we quote as follows:

"* * * *However,* we do *not believe that we should,* without some good reason or unless required to do so by some applicable statute (see *Patterson* v. *State,* 96 Ohio St. 90, 104, 117 N. E. 169, L. R. A. 1918A 583), *approve a practice which would enable counsel to place his client in a position* where he would take *advantage of a favorable verdict* and, at the *same time, avoid an unfavorable verdict merely* because of an error of the trial judge *that counsel made no effort to prevent when he could have made such effort and when such error could have been avoided.* Such a practice would enable counsel to obtain for his client more than the one fair trial to which he is entitled. See *Stewart* v. *State,* 15 Ohio St. 155, 161." (Emphasis ours.)

This member concludes that in this case the defendant waived any purported defects in the affidavit by failing to attack the affidavit in the trial court, and that the voluntary initiative reversal by the majority is contrary to law.