The State of Ohio, Appellee, *v.* Kasnett, Appellant.

(No. 689—Decided May 17, 1972.)

*Messrs. Lavelle & Yanity,* for appellant.
*Mr. Paul J. Gerig,* for appellee.

Gray, J. This cause is in this court on appeal from a judgment of the Municipal Court of Athens County. The indictment charged that defendant "unlawfully did publicly defile, deface and cast contempt upon the flag of the United States by having said flag sewn on the seat of his pants, contrary to and in violation of R. C. 2921.05." Defendant was tried to a jury and was found guilty. A judgment was entered upon the verdict, and defendant filed his notice of appeal and assigned the following errors.

"I. The trial court, in overruling defendant-appellant's pre-trial motion to dismiss for the reason that the affidavit charging defendant-appellant fails to allege facts constituting a crime in Ohio, committed reversible error.

"II. Defendant-appellant's motion to dismiss the case presented to the trial court after the completion of plaintiff-appellee's evidence was erroneously denied.

"A. Ohio Revised Code Section 2921.05, interpreted in

accordance with the rules of statutory construction, and in such manner as to satisfy the requirements of the constitutions of the State of Ohio and the United States of America concerning specific statutory definition of criminal conduct, does not cover or proscribe the activity revealed by the evidence herein and held to be unlawful by the lower court.

"B. If the evidence as presented in the instant cause is held to establish a crime under Revised Code Section 2921.05 then said section must be deemed as unconstitutional for its failure to state with sufficient specificity what conduct it proscribes as criminal.

"III. The lower court in accepting the argument of plaintiff-appellee that the wearing of the American Flag upon the hip pocket of one's jeans in and of itself is an act of defilement which falls within the coverage of the 'catch-all' phrase 'otherwise cast contempt upon' specifically and erroneously rejected the position of higher authority that these words of Revised Code Section 2921.-05 'mean acts of physical destruction or abuse similar in nature to those acts enumerated in such section, i. e. mutilating, burning, etc."

We will now consider the first assignment of error.

Defile means: To corrupt the purity or perfection of; to debase; to make ceremonially unclean; to pollute; to sully; to dishonor.

Deface means: Mar, injure, or spoil.

Contempt is defined as the act of despising; the feeling with which one regards that which is esteemed low, vile, or worthless; disdain; scorn. Webster's Third New International Dictionary (1961).

The affidavit charged the offense in the words of the statute. R. C. 2941.05 authorizes such procedure.

Judge Matthias, speaking for the court in *State* v. *Yudick* (1951), 155 Ohio St. 269 at pages 276, 277 said:

"The record discloses that the accused did not request a bill of particulars. It is contended by his counsel that because of details set forth in the indictment an application for a bill of particulars would have been futile. A plea of not guilty by the accused having been entered, the

case is governed by the decision of this court in *State* v. *Hutton*, 132 Ohio St., 461, 9 N. E. 2d 295. The following language in the opinion thereof is pertinent:

" 'Therefore, if the defendant felt that the affidavit was not sufficiently definite to inform him as to the charge preferred against him, it was his privilege and duty to seasonably request of the prosecutor or the court a bill of particulars setting up more specifically the nature of the offense charged. This he failed to do. Hence the lower courts were correct in holding that the matter was waived when the defendant proceeded to trial.' "

Since the offense was laid in the affidavit in the terms of the statute, it stated an offense denounced by the laws of Ohio and if for any reason defendant thought that the charge against him was indefinite he should have asked for a bill of particulars. Any objections that defendant might have had were waived by defendant by his going to trial on the affidavit as it was worded.

Subsection A, in the second assignment of errors, has been covered by the discussion of assignment of error No. I.

Defendant next claims that R. C. 2921.05 is unconstitutional. Very recently, Justice Herbert, speaking for the court in *Bedford Hts.* v. *Tallarico* (1971), 25 Ohio St. 2d 211, 212 said:

"It is well established that courts will refrain from declaring legislation unconstitutional unless the posture of a cause leaves no logical alternative thereto." See cases cited.

We now advert to assignment of error II B. On the vagueness question, we believe the statute admitted of that degree of reasonable certainty that could constitute a violation, so that it can not be said that a person possessing a reasonable degree of intelligence could not understand what conduct would be disrespectful to the flag and what conduct would not. We are of the opinion that wearing the flag, or part of it, on that part of the clothing covering the human fundament, a part of the human body universally and historically considered unclean, and

the object of derision and scorn and the reference to which in a certain tenor is often the source of fighting words, was a clear act of defilement in that the flag was thus dishonored; that the idea of dishonorment was one of the keys to the question of whether the flag was defiled. We must conclude that the use of the word "defile" in the subject statute was intended to include public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or profane purpose. It is our opinion that the wearing of a flag on the seat of one's pants, under the circumstances of this case, is a physical act which defiles the flag in violation of R. C. 2921.05. Such a use of the flag would degrade and cheapen it in the eyes of the people, as well as defeat the object of maintaining it as an emblem of national power and honor. *Halter* v. *Nebraska* (1907), 205 U. S. 34. Similarly *People* v. *Cowgill* (1969), 78 Cal. Rptr. 853, appeal dismissed 396 U. S. 371.

The defendant may have sincere ideological views, but he must find other ways to express them. Whether defendant thinks so or not, a reasonable man would think that the wearing of the flag on the seat of his pants was an act of dishonor.

The following statement, taken from page 41 of Justice Harlan's opinion in *Halter, supra,* may sound old-fashioned and out-of-date to some, but we think it worth repeating.

"From the earliest periods in the history of the human race, banners, standards, and ensigns have been adopted as symbols of the power and history of the peoples who bore them. It is not then remarkable that the American people, acting through the legislative branch of the government, early in their history, prescribed a flag as symbolical of the existence and sovereignty of the nation. Indeed, it would have been extraordinary if the government had started this country upon its marvelous career without giving it a flag to be recognized as the emblem of the American Republic. For that flag every true American has not simply an appreciation, but a deep affection. No American, nor any foreign born person who enjoys the

privileges of American citizenship, ever looks upon it without taking pride in the fact that he lives under this free government. Hence, it has often occurred that insults to a flag have been the cause of war, and indignities put upon it, in the presence of those who revere it, have often been resented and sometimes punished on the spot."

Defendant maintains that sewing the flag on the seat of his pants is not an act of defilement which falls within the coverage of the "catch-all" phrase, "otherwise cast contempt upon." We reject this contention as the words defile, deface and contempt as used in the statute were used in the affidavit charging the offense. The contemptuous act of defilement and defacement was further described in the indictment by the words, "having said flag sewed on the seat of his pants." The above words proscribing the offense have a well defined, well understood and generally accepted meaning, and by their use, an accused is informed of the nature of the act he is alleged to have committed.

Still, the statute's purpose is not to suppress the airing of any idea, but to provide for the preservation of the public peace.

This court also believes that the state has a second interest in punishing the wearing in public of the flag on the seat of one's pants. That interest is the preservation of the flag as a symbol of national unity and to further the ideals and purposes for which our nation was founded.

History has shown that one of the incidents of nationality is the adoption of a national flag or other symbol. Our own country, early in its history, adopted a flag to represent its existence and sovereignty as a nation. The importance of this flag in developing a sense of loyalty to our nation and its ideals from its incipient stages down to the present is without question. When a state enacts legislation, as in this case, to punish the public defilement of the flag that has represented this country throughout its history, the state is aiding in the development and extension of a unity of purpose within the nation. In so do-

ing, it necessarily benefits itself, as well as the nation, for the state is indissolubly connected to the Union. *Halter* v. *Nebraska, supra.*

Although, what the defendant in this case was trying to express is purely speculative, if anything, this court is certain that he could have conveyed whatever message he may have had in many ways other than wearing the flag over his fundament.

The defendant could have conveyed any possible idea that he may have intended to any conceivable audience by means other than wearing the flag on his buttock in a public place.

One of the bases of defendant's defense is that he has his constitutional right of free speech. Granted. However, in our view, defendant's absurb and immature antic was mainly conduct and very little speech.

Defendant further claims that the trial court rejected the position of higher authority. He specifically contends that the Athens Municipal Court rejected the reasoning and conclusions of the Court of Appeals for Lucas County in *State* v. *Saionz* (1969), 23 Ohio App. 2d 79 and that that rejection amounted to reversible error. The fact pattern in that case was different than the one in the present case. In the *Saionz* case, defendant wore the flag as a cape over his shoulders not as a patch on his clothing over his buttock.

We believe the law to be that while courts of coordinate jurisdiction may be taken into consideration, they are not binding on a court of equivalent rank.

Defendant studiously avoids reference to *Halter, supra,* the philosophy of which has not been challenged, and which has binding force and effect upon all of the courts of the United States.

Finally defendant contends that *Saionz* has been affirmed by the Ohio Supreme Court and gives as his citation the Ohio State Bar Association Report of March 30, 1970, page 395. An inspection of that citation reveals the following:

"*State, Appellant,* v. *John Edward Saionz, Appellee.*

Lucas County. Appeal from the Court of Appeals. Dismissed, sua sponte, no substantial constitutional question involved. Taft, C. J., Leach, O'Neill, Schneider, Duncan and Corrigan, JJ., concur."

The overruling by the Supreme Court of a motion to certify the record does not amount to an affirmance of the judgment or decision of the Court of Appeals, but amounts only to a determination that the case presented was not one involving a substantial constitutional question. *Keesecker* v. *McKelvey Co.* (1943), 141 Ohio St. 162. No precedent for the decisions of later cases by the Supreme Court is established where it thus overrules a motion to certify.

The affidavit in this case states that one John Edward Saionz, "* * * did unlawfully, publicly and contemptuously cast contempt upon a flag of the United States of America by publicly wearing the same as a cape * * *."

In our case, it was charged that defendant "unlawfully did defile, deface and cast contempt upon the Flag of the United States by having said Flag sewn to the seat of his pants."

The facts and the affidavit are different in *Saionz* and our case.

Defendant was a student at Ohio University.

While freedom of expression is certainly the hallmark of academic freedom, with the university community, one crucible in which ideas and possible solutions to our complex civilization can be ground out for the bettermen of all mankind, freedom of expression cannot and should not be an instrument of unbridled license.

We wish to make several observations concerning the position taken by our concurring colleague. First, we wish to make the point that no one forced defendant to wear the flag sewn to the seat of his trousers so that it extended over his anus. He did so of his own free will and accord. If he were going to wear it any place, he chose the one place which would show the most contempt, the most defilement, a place which would debase the flag the most and a place which would sully and dishonor the flag the most.

Secondly, he states that he is in agreement with the philosophy expressed in *State* v. *Saionz, supra,* where defendant was prosecuted for slitting the flag and using it as a cape. There is a wide difference between the shoulders of the human body and the anal part. Judge Stephenson in his considered opinion makes no distinction between these two areas of the body.

Thirdly, our concurring colleague cites with approval *Hoffman* v. *United States* (D. C. Cir. 1971), 445 F. 2d 226. In that case, Abby Hoffman had purchased a shirt that had been made out of a United States flag and wore it publicly as a shirt. We do not think that *Hoffman* can be used as a precedent in this case. The jeans and the flag sewn thereon are exihibts in this case. It is very apparent upon inspection that the flag is dirty, sullied, has been rendered ceremonially unclean and has been dishonored. An inspection of the flag also shows that dirt and grime have been ground into its fabric. In dealing with this question, we must recognize the difference in the use of the flag as an article of clothing, i. e., a cape (*Saionz*) and a shirt (*Hoffman*), and an ensign used for no purpose other than as a symbol of some other thing—in this case, the United States of America.

Fourth, from an inspection of the jeans worn by defendant, we must conclude that there was a physical desecration of the flag. However, for the purpose of argument, let us assume the truth of our concurring colleague's statements. Why would the legislature use the words "publicly mutilate, burn, destroy, defile, deface, trample upon or otherwise cast contempt upon such flag" if the legislature intended to mean it was only an offense to "mutilate" the flag. Why did it go on to use the words "burn, destroy, defile, deface, trample upon, or otherwise cast contempt upon the flag." All of these words are of equal importance and each should be given effect. If mutilate is the only offense denounced by the law, then why did the legislature use other verbs such as burn, destroy, deface, defile, trample upon or otherwise cast contempt upon.

We believe that this statute is unambiguous and needs no interpretation or construction. However, we wish to

state that a cardinal rule is that the legislature will be presumed to have inserted every part of a statute for a purpose and to have intended that every part should be carried into effect. Indeed, it is also a cardinal rule that significance and effect should be accorded every part of the statute including every section, paragraph, sentence, clause, phrase and word. *United States* v. *Fisher* (1883), 109 U. S. 143; *McDonald* v. *Thompson* (1938), 305 U. S. 263.

On March 1, 1972, the Supreme Court, speaking through Chief Justice O'Neill, in *State, ex rel. Wallace,* v. *Celina* (1972), 29 Ohio St. 2d 109, 112, 113 said:

"* * * When the language of an enactment '* * * is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation.' In the instant case there is no requirement to resort to rules of construction. *Sears* v. *Weimer* (1944), 143 Ohio St. 312; *Cleveland Trust Co.* v. *Eaton* (1970), 21 Ohio St. 2d 129, 138.

"To construe Section 6 (B) to include Municipal Court judges would add words to that section which are not therein contained and violate the rule that 'in determining legislative intent it is the duty of this court to give effect to the words used, not to delete words used or to insert words not used.' *Columbus-Suburban Coach Lines* v. *Pub. Util. Comm.* (1969), 20 Ohio St. 2d 125." We believe that these words are directly in point.

The concurring opinion is based upon the maxim *noscitur a socus.* It has no application to this statute as it is worded so plainly that it needs no construction. Moreover, a court has no right to resort to such maxim for the purpose of reading into a statute a distinction which the legislature neither made nor intended to make. It has also been held that the doctrine should not be made to operate to render general words meaningless, which we believe such use would. We also believe that the resort to this purported statutory construction would result in subtly emasculating this statute.

Almost 40 years ago, in *Snyder* v. *Mass.* (1934), 291 U. S. 97, Mr. Justice Cardozo wrote an opinion in which

he refused to set aside a state criminal conviction because of a claimed denial of the right of confrontation. The closing words of that opinion, at page 122, are worth repeating here:

"There is danger that the criminal law will be brought into contempt—that discredit will even touch the great immunities assured by the Fourteenth Amendment—if gossamer possibilities of prejudice to a defendant are to nullify a sentence pronounced by a court of competent jurisdiction in obedience to local law, and set the guilty free." Cited with approval in *Dutton* v. *Evans* (1970), 400 U. S. 74.

The Supreme Court of Ohio issued a caveat to the judges of Ohio 125 years ago when Judge Wood, speaking for the court, said:

"The laws of this state appear to us to throw sufficient protection around the accused to guard vigilantly all his rights, and secure him a fair and impartial trial; and when this is done, the court ought not, by an unwise astuteness, in the application of overstrained principles, and hairsplitting technical objections, to cheat the law of its victim, and thereby give encouragement to villainy and crime." *Spencer* v. *State of Ohio* (1844), 13 Ohio 401, 407.

The trial court sentenced the defendant to banishment from Athens County for two years, imprisonment for one year with nine months thereof suspended on certain conditions. A fine of $500 was also imposed. We are of the opinion that that portion of the sentence relating to banishment is clearly illegal and that the imposition of the remainder of the sentence was a mistaken use of discretion. We believe that the imposition of this latter portion of the sentence is much greater than the proper protection of society demands. Under the authority given us by Article IV, Section 3 (B) (1) (f), Ohio Constitution, we void the sentence of the trial court and assess a fine of $200 upon the defendant. The judgment of conviction is affirmed.

*Judgment accordingly.*

ABELE, P. J., and STEPHENSON, J., concur.

STEPHENSON, J., concurring. I concur in the judgment of affirmance for the reasons set forth below. As stated in *West Virginia State Bd. of Education* v. *Barnette* (1943), 319 U. S. 624, "the case is made difficult not because the principles of its decision are obscure but because the flag involved is our own." Rather obviously, it behooves reviewing courts to decide such a case, involving a flag we love and respect, upon fixed legal principles applicable to any criminal appeal uninfluenced by any emotional consideration and irrespective of personal agreement with the result. To do any less is to tarnish the image of justice under law that is a part of our American system of jurisprudence which our flag represents. Bearing these concepts in mind, I review this case.

There are two dispositive issues raised by this appeal. The first is whether the conduct of the defendant is proscribed by R. C. 2921.05 and the second, if such conduct is so proscribed, is the statute violative of any constitutional right of the defendant. It is a settled principle that an appellate court will not consider a constitutional issue unless a decision on such issue is necessary for a resolution of the appeal. *Bedford Heights* v. *Tallarico* (1971), 25 Ohio St. 2d 211; *Rucker* v. *State* (1928), 119 Ohio St. 189. Hence, consideration must be given first to the issue of whether the conduct of defendant was violative of R. C. 2921.05.

R. C. 2921.05 provides, in its pertinent parts, the following:

"No person shall * * * publicly mutilate, burn, destroy, defile, deface, trample upon, or otherwise cast contempt upon such flag."

The affidavit upon which the defendant was tried provides, in its pertinent parts, the following:

"Gary David Kasnett * * * unlawfully did publicly defile, deface and cast contempt upon the Flag of the United States by having said Flag sewn on the seat of his pants."

In consideration of the applicability and scope of any penal statute, the rule is, as stated by Judge Zimmerman in *City of Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140;

"It is well established in Ohio that * * * penal statutes and ordinances are to be interpreted and applied strictly against the accuser and liberally in favor of the accused." In light of this rule, what conduct did the General Assembly intend to embrace within its terms?

In *State* v. *Saionz* (1969), 23 Ohio App. 2d 79, the Court of Appeals for Lucas County had before it a conviction under the portion of the statute here in question. The conduct there prosecuted was the wearing of a flag as a cape. The court reversed the conviction. The affidavit in *Saionz* was worded in the following manner, in the pertinent portions:

"John Edward Saionz * * * did unlawfully, publicly and contemptuously cast contempt upon a flag of the United States of America by publicly wearing same as a cape * * *." Page 80. In reversing, the court applied the doctrine of *ejusdem generis* and concluded at pages 82, 83:

"The words otherwise cast contempt, therefore mean acts of physical destruction or abuse similar in nature to acts of mutilating, burning, destroying, defiling, defacing or trampling upon. This is the rationale of the recent amendment to R. C. 2921.05 by the General Assembly which added the specific words burn, destroy, and trample upon."

In my view, the opinion in *Saionz* is well reasoned and well written, and, hence, I am in agreement with the rationale and holding therein. It is evident that the court in *Saionz* was of the view that the enumerated words in the statute, including "defile" were words restricted in meaning to "physical destruction or abuse."

There is a very logical reason for such view. Webster's Third New International Dictionary (1961) gives various meanings to the word defile. They are (1) to make filthy: dirty, befoul: (2) to corrupt the purity and perfection thereof: debase: (3) to rob of chastity: ravish, violate: (4) to make ceremonially unclean: pollute: (5) tarnish, sully, dishonor. The majority in this case interprets the word "defile" to mean "public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or

profane purpose." I am unpersuaded that this was the meaning intended by the legislature. The definition is that set forth in *Hoffman* v. *United States* (1969), 256 A. 2d 567. (District of Columbia Court of Appeals.) In *Hoffman,* the prosecution was commenced under 18 U. S. C. A. Section 700, which in its pertinent part provides:

"(a) Whoever knowingly casts contempt upon any flag of the United States by publicly mutilating, defacing, defiling, burning, or trampling upon it shall be fined not more than $1,000 or imprisoned for not more than one year, or both."

The court, in *Hoffman,* recognized the word "defile" could mean making something filthy or dirty or could have a broader meaning, i. e., conduct which dishonors the flag. The court chose the latter. It adopted the definition of defile set forth in the majority opinion herein, and affirmed a conviction for the wearing of a shirt which resembled a flag, made commercially, to which political buttons were affixed.

The *Hoffman* case was reversed by the United States Court of Appeals for the District of Columbia. *Hoffman* v. *United States* (D. C. Cir. 1971), 445 F. 2d 226. The court concluded that that statute could not be given a loose or expanded meaning and concluded the congressional intent was "to condemn only physical mutilation, defacement, or defilement of the flag, its 'physical dishonor or destruction.' "

In *Joyce* v. *United States,* decided October 26, 1971, and reported in digest form in 10 Crim. L. Rep. 2089, the United States Court of Appeals for the District of Columbia stated, with respect to the federal statute:

"* * * the statute here charged to have been violated proscribes only contempt by a public mutilation, defacing, defiling, burning or trampling. All these prohibited acts constitute conduct involving some physical act directly touching the flag and which are physically destructive of the flag."

Aside from the admonition of the Ohio Supreme Court that penal statutes are to be strictly construed in favor of

the accused and against the accuser, *supra*, there are two reasons which persuade me that only physical defilement, such as spitting upon, throwing human excrement thereon or similar acts, were intended to be prohibited by the word "defile" in the statute here considered.

First is the consideration of the doctrine of *noscitur a sociis*. This maxim is stated in 2 Sutherland, Statutory Construction 393, Section 4903, thusly:

"In case the legislative intent is not clear, the meaning of doubtful words may be determined by reference to their association with other associated words and phrases. Thus, when two or more words are grouped together, and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word."

Ohio has long relied upon such maxim. See 50 Ohio Jurisprudence 168, Statutes, Section 190 and the numerous Ohio Supreme Court and lower Ohio authority cited under note 18 of that publication. Comparisons of the word "defile" with the words "mutilate," "burn," and "destroy" which precede it in the statute, and with the words "deface" and "trample upon" which follow it, is to me, a clear indication of legislative intent to use the word "defile" as meaning physical desecration, since this is the obvious meaning of the associated words. Secondly, as a guide to the legislative intent, reference may be made to the 1967 legislative amendment of R. C. 2921.05. The amendment may be found in 132 Ohio Laws 952 (amended in amended house bill No. 664). By this amendment, the legislature inserted into the statute the additional words (which were not, prior thereto, a part of the statute) of "burn," "destroy," "trample upon," and "otherwise" before the existing phrase "cast contempt upon."

If the legislature intended the word "defile" to have the meaning the majority herein asserts, what was the need for amending the statute since burning, destroying or trampling upon the flag would be acts of "public conduct which brings shame or disgrace upon the flag by its use for an unpatriotic or profane purpose."

It is my conclusion that the word "defile" as used in the statute was intended to reach only acts of physical defilement, hence, I am of the view that the simple attachment and wearing of a flag sewn upon articles of clothing is *alone* not of the character of *physical* defilement of the flag that our legislature intended to proscribe. This writer is confident that if the General Assembly had intended a meaning of symbolic desecration by the positioning of the flag, the General Assembly could and would have chosen appropriate words for such purpose.

It should be noted that the facts herein are distinguishable from *People* v. *Cowgill* (1969), 78 Cal. Rptr. 853, cited by the majority, wherein the defendant admitted he caused a flag of the United States to be cut up and made into a vest which he wore. Physical mutilation of the flag, as such, is not claimed in this case.

It should be noted further there is not one line of testimony in the record herein by which it is claimed that the defendant defaced or otherwise dirtied the flag. This is understandable since no such claim is made in the affidavit, the act upon which the prosecution was based being described as "having the flag sewed on the seat of his pants."

There appears to be a suggestion in appellee's brief, at least impliedly, that the sewing of the flag was in itself a physical act of defilement. The record discloses that the sewing was not done by the defendant but by another person. In any event, aside from the fact that it would not be public, it would not be the physical desecration contemplated by the statute. To conclude otherwise would be to make criminal the sewing of flags by police officers on their uniforms, certainly a prohibition not intended by the legislature.

In light of the above, it is the conclusion of the writer that the conviction below is not sustainable either upon a basing of "defilement" or "defacement" of the flag.

There remains, however, in the affidavit, the allegation that the defendant "did * * * cast contempt on * * *." The question devolves into whether or not there is evidence in the record to warrant, under this portion of the charge

in the affidavit, a finding that defendant cast contempt within the restricted meaning of the term "physical desecration." Proof of the charges in this part of the affidavit would support a conviction regardless of the prior enumeration. *Hale* v. *State* (1898), 58 Ohio St. 676.

The evidence discloses that the attachment of the flag was upon the right portion of the seat of the trousers. It is further disclosed that the position of placement and its size, nine inches by six inches, was such that, when seated, defendant, by necessity, had to sit upon the flag. A police officer testified that when he observed the flag on defendant's trousers, the defendant walked to a table in a restaurant and sat down "so he was sitting on the flag."

In my view, this is a physical abuse proscribed by the statute. It is a similar act of physical abuse to the prohibition of "trample upon" which is specifically delineated in the statute. It is no less a violation that one who tramples upon a flag does not actually tear, rip or otherwise mutilate or deface it, since such result is not statutorily required. Neither, in my view, is such a result required here.

It is evident to this writer that, under the facts of this case, something more than a mere attachment of the flag to an article of clothing exists. It is an attachment in such a manner that physical abuse would of necessity and did actually follow.

To be, however, within the proscription of the statute, there must be an evidentiary basis for a finding of intent to violate the statute. There is respectable authority that when a flag desecration statute does not specifically require intent, it is to be classed as a penal law which is described as *mala prohibita* and is violated if the prohibited act is done regardless of intent. *People* v. *Radich* (1970), 26 N. Y. 2d 117, 257 N. E. 2d 30. This writer does not concur in that view.

The fact that the legislature of Ohio has not specifically inserted a requirement of intent is not alone dispositive. Absent a clear legislative intent to the contrary to bring the offense within the *malam prohibitium* class, a

statute defining an offense which is silent as to intent does not, generally, require an allegation and proof of a specific intent, but proof of a general intent to do the proscribed act is still required. *State* v. *Lisbon Sales Book Co.* (1964), 176 Ohio St. 481; *State* v. *Healy* (1951), 156 Ohio St. 229. See, however, *State* v. *Ross* (1967), 12 Ohio St. 2d 37.

The Supreme Court of the state of Washington, in *State* v. *Turner* (1970), 78 Wash. 2d 276, 474 P. 2d 91, has stated with respect to the flag desecration statute of that state, which like the one here in question was silent on the question of intent, the following, at 283:

"Accordingly, unless the statute expressly eliminates the element of intent or design or defines the kinds of offenses which, by their very nature, are classified judicially as mala prohibita, the ingredients of intent, design and purpose should be deemed indispensable to a proof of guilt. To hold otherwise, would make anyone criminally liable who accidentally burned or walked upon the flag in public or unintentionally or accidentally committed some other act toward it which, if intent were present, would clearly constitute a defacing or defilement or a holding up to contempt."

The action of the defendant in having another affix the flag here in question, and wearing and sitting upon it was sufficient, despite defendant's denial of any intent to desecrate, to justify a finding of the requisite intent by the trier of the facts.

I conclude, therefore, unless there is a constitutional infringement, the judgment should be affirmed.

The constitutional claim of invalidity of the statute is summarized by defendant in his brief as follows:

"If the evidence as presented in the instant cause is held to establish a crime under Revised Code Section 2921.05 then said section must be deemed as unconstitutional for its failure to state with sufficient specificity what conduct it proscribes as criminal."

It should be noted that there is no claim by appellant that there is present in this case the element of symbolic speech which is protected by the First Amendment. The record discloses that appel-

lant testified that he had a hole in his trousers and had the flag sewed thereon and wore the same as a "part of a fad now that the American Flag has become a way of dress." There was no testimony by appellant that any thought, idea or precept was being or attempted to be communicated to others by his conduct. It is unnecessary, therefore, to discuss any concept of symbolic speech considered in such flag desecration cases as *Hoffman* v. *United States, supra*; *People* v. *Radich, supra*; *People* v. *Cowgill, supra*; *Hodsdon* v. *Buckson* (1970), 310 F. Supp. 528. For a listing of the "symbolic speech" cases considered by the United States Supreme Court, see *Cowgill* v. *California* (1970), 396 U. S. 371.

Likewise, since defendant does not attack the authority of the state to legislate in the area of flag desecration statutes upon any constitutional ground, reference to and discussion of *Halter* v. *Nebraska* (1907), 205 U. S. 34, and its progeny is here unnecessary.

While there is a peripheral claim, raised pursuant to the assignment of error urging the adoption of a meaning of statutory proscription only as to physical destruction and abuse as set forth in *State* v. *Saionz, supra,* that under a contrary view "freedom of expression" would be infringed, inasmuch as this writer has given the statute the interpretation urged, it is unnecessary to consider whether a contrary view would have the result claimed.

The sole question is whether the statute is unconstitutional on its face in that it is so vague and indefinite that it gives no warning of what conduct transgresses the statute and, therefore, is violative of due process. The test is well settled. It is whether a person of ordinary intelligence, who would be law abiding, can determine with reasonable precision what conduct it is their duty to avoid. *Winters* v. *New York* (1948), 333 U. S. 607; *United States* v. *Petrillo* (1946), 332 U. S. 1, 15 Ohio Jurisprudence 2d 269, Criminal Law, Section 11.

The federal flag desecration statute, 18 U. S. C. 700, *supra,* has been held to be sufficiently definite for a person of ordinary intelligence to determine the conduct

therein prescribed. *Joyce* v. *U. S.* (D. C. Cir. 1971), 10 Cr. L. 2089. The statute of New York, California and Iowa have, likewise, withstood such constitutional attacks. *People* v. *Radich* (1970), 26 N. Y. 2d 114, 125; *People* v. *Cowgill* (1969), 78 Cal. Rpt. 853; *State* v. *Waterman* (Iowa 1971), 190 N. W. 2d 809.

It is this writer's conclusion that the statute here in question gives fair notice of the conduct proscribed to men of ordinary intelligence. The statement of Justice Corrigan in *Cincinnati* v. *Coates* (1970), 21 Ohio St. 2d 66, 69, in discussing the constitutionality of an unlawful assembly ordinance, appears appropriate:

"We conclude, as did the Supreme Court of the United States in *Cameron* v. *Johnson*, 390 U. S. 611, 616, in which the issue of the vagueness of a statute was presented, that the ordinance clearly and precisely delineates its reach in words of common understanding. It is a precise and narrowly drawn regulatory statute (ordinance) evincing a legislative judgment that certain specific conduct be * * * proscribed."

There remains the matter of the penalty which is of concern to both my colleagues and the writer. R. C. 2921.05 provides a penalty of not less than one hundred nor more than one thousand dollars or imprisonment of not less than thirty days nor more than one year, or both.

The sentence imposed was a fine of $500 and costs and one year in jail with nine months of the jail sentence suspended on condition that the defendant be a law abiding citizen and remain outside of Athens County for a period of two years.

Defendant did not raise, argue, or brief any claim in respect to the validity of the sentence. Acting sua sponte, the majority herein finds the banishment provision illegal and, as to the remainder of the sentence, finds that its imposition was an abuse of discretion. It voids the sentence and then proceeds to impose a fine of $200, purportedly under authority of Article IV, Section 3 (B) (1) (f) of the Ohio Constitution.

While there is statutory authority for a misdemeanor

96

sentence to be suspended upon such conditions as the court may impose (R. C. 2947.13), this writer agrees with the majority herein that the imposition of a condition of banishment is illegal for the reason that such condition is contrary to public policy. *Ex Parte Scarborough* (1946), 76 Cal. App. 2d 648, 173 P. 2d 825; *State* v. *Baum* (1930), 251 Mich. 187, 231 N. W. 95; Annot. 70 A. L. R. 98.

The sentence that a trial court imposes rests within the sound discretion of the sentencing court as long as it is within the penalty limits set forth in the statute. *Lee* v. *State* (1877), 32 Ohio St. 113; *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22. Since the right to suspend upon the conditions the court below adopted, which we hold to be unlawful, undoubtedly entered into the exercise of that discretion as to the sentence the trial court chose to impose, I would remand to the trial court for the imposition of a new sentence in conformity with our holding herein.