STATE of Iowa, Appellee,

v.

Patricia M. FARRELL, Appellant.

No. 55658.

Supreme Court of Iowa.

Nov. 13, 1974.

Mark E. Schantz, Iowa City, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins and Richard Winders, Asst. Attys. Gen., Carl J. Goetz, County Atty., and Thomas M. Martin, Asst. County Atty., for appellee.

RAWLINGS, Justice. ·

We here accord further consideration to State v. Farrell, vacated opinion 209 N.W.2d 103 (Iowa 1973), pursuant to a directive issued August 6, 1974, by the Supreme Court of the United States. See Farrell v. Iowa, —— U.S. ——, 94 S.Ct. 3198, 41 L.Ed.2d 1154 (1974).

More particularly, this court is called upon to now reevaluate its position in *Farrell, supra,* in light of Spence v. State of Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974).

At the threshold it is to us apparent, for reasons later set forth, *Spence, supra,* is inapposite. We again respectfully affirm on defendant's Farrell's appeal to this court.

I. State v. Farrell, *supra,* unquestionably involved the *mutilation by burning of a United States flag in a public place.* In other words, the offense occurred in an open courtyard of a dormitory in which an unknown number of university students occupied quarters facing upon the aforesaid incident-related area.

Conversely, *Spence, supra,* dealt with the *nonmutilative removable·taping of a peace symbol on a flag then displayed on defendant's privately occupied premises.* This was done, as says *Spence, supra,* 418 U.S. at 415, 94 S.Ct. at 2732, 41 L.Ed.2d at 849: "* * * in a way closely analogous to the manner in which flags have always been used to convey ideas." See also State v. Kool, 212 N.W.2d 518 (Iowa 1973).

Furthermore, as noted by Mr. Justice Rehnquist, dissenting in *Spence, supra,* 418 U.S. at 418, 94 S.Ct. at 2734, 41 L.Ed.2d at 851: "The Court takes pains to point out

that petitioner did not 'permanently disfigure the flag or destroy it' * * *."

Significantly, defendant Farrell made no pretense of displaying our national emblem in a manner akin to that historically done to express a personal belief. Rather, she permanently and contumaciously, in a public place, destroyed our symbol of patriotism, of pride in the history of our country and of the service, sacrifice and valor of millions of Americans. See *Spence, supra,* 418 U.S. at 413, 94 S.Ct. at 2732, 41 L.Ed.2d at 848.

▮ We are again constrained to hold the statute here in question (Section 32.1, Code of Iowa 1971), as instantly applied, is directed to and regulates the form by which defendant Farrell's message was expressed, not the content thereof, and is sufficiently irrelative to suppression of free expression. See *Farrell, supra,* 209 N.W.2d at 107.

II. Additionally, defendant Farrell was charged under our flag desecration statute (Code § 32.1), *not* for violation of an "improper use" enactment, a distinction observed in *Spence, supra,* 418 U.S. at 407, 94 S.Ct. at 2728, 41 L.Ed.2d at 845.

Moreover, Spence testified "his purpose was to associate the American flag with peace instead of war and violence." See *Spence, supra,* 418 U.S. at 408, 94 S.Ct. at 2729, 41 L.Ed.2d at 845.

On the otherhand, Farrell offered no trial testimony as to her motive, purpose or intent in mutilating the flag as she did. Actually, this court indulged in a mere inference her conduct was related to a prior and distance-remote student demonstration protesting the Indo-China War and presence of R.O.T.C. on the university campus. See *Farrell, supra,* 209 N.W.2d at 104.

III. It is also to us evident a *"risk of breach of the peace"* attended Farrell's aforesaid flag desecration in a public place. See *Spence, supra,* 418 U.S. at 409, 94 S.Ct. at 2729, 41 L.Ed.2d at 846.

In that vein, as observed in *Farrell, supra, 209* N.W.2d at 107, this court is persuaded the State of Iowa does have a viable interest in the preservation of peace and order within this jurisdiction. Otherwise, the general public would have little or no assurance of orderly behavior on the part of others or of that tranquility which the people are entitled to enjoy. See Cox v. State of New Hampshire, 312 U.S. 569, 574–576, 61 S.Ct. 762, 765–766, 85 L.Ed. 1049 (1941); Newby v. Woodbury County District Court, 259 Iowa 1330, 1340, 147 N.W.2d 886 (1967).

Also, *risk* of breach of the peace must perforce depend upon the place and circumstances. 12 Am.Jur.2d Breach of Peace Etc., §§ 4–7; 11 C.J.S. Breach of the Peace §§ 1–2.

The question thus posed is whether Patricia Farrell, by her flag burning conduct in a public place, created a risk of breach of the peace.

The term "risk", as here employed, does not to us mean a breach of the peace must have occurred or even be imminent. On the contrary, it denotes nothing more than words or conduct creating exposure to a chance, danger, hazard or peril of breach of the peace. See "Risk", Webster's Third New International Dictionary, Unabridged, at 1961; 77 C.J.S. Risk at 441.

Looking again to the factual situation here at hand we said in *Farrell, supra,* 209 N.W.2d at 104:

"[T]wo Iowa University security officers testified to the effect each felt personal distress upon witnessing the flag burning incident. Defense witnesses stated no interaction occurred between demonstrators, and no hostility was 'sensed'. Patricia did not testify."

In that regard it is also only fair to assume the above mentioned officers were present to maintain order, if possible, not to instigate trouble, and that they accordingly restrained themselves.

A review of the record in *Farrell, supra,* upon the aforesaid United States Supreme Court reconsideration directive, further reveals two individuals were seen leaving the main body of the instantly involved assem-

blage and that one of those departees pulled a dormitory fire alarm. There resultantly followed an immediate emergence of residents from the housing facility.

Upon the foregoing factual basis we are persuaded defendant Farrell's conduct created a *risk* of breach of the peace.

In light of the foregoing we find Code § 32.1 furthers the preservation of peace and order, a substantial State interest, with nothing more than incidental restriction on First Amendment liberties. See Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 1810, 40 L.Ed.2d 224 (1974).

From this flows the conclusion Code § 32.1 was constitutionally applied to defendant Farrell's conduct.

■ IV. Moreover, upon the aforesaid mandated reconsideration of the case at bar, we further conclude Code § 32.1, to the extent here involved, serves a viable State interest in preserving the physical integrity of the United States flag as an unalloyed symbol of our country.

On that subject the Court aptly stated in *Spence, supra,* 418 U.S. at 413, 94 S.Ct. at 2732, 41 L.Ed.2d at 848:

"For the great majority of us, the flag is a symbol of patriotism, of pride in the history of our country, and of the service, sacrifice and valor of the millions of Americans who in peace and war have joined together to build and to defend a Nation in which self-government and personal liberty endure. It evidences both the unity and diversity which are America. For others the flag carries in varying degrees a different message. 'A person gets from a symbol the meaning he puts into it, and what is one man's comfort and inspiration is another's jest and scorn.' West Virginia State Board of Education v. Barnette, *supra,* 319 U.S. [624], at 632–633, 63 S.Ct. [1178], at 1182 [87 L.Ed. 1628]. It might be said that we all draw something from our national symbol, for it is capable of conveying simultaneously a spectrum of meanings. If it may be destroyed or permanently disfig-

ured, it could be argued that it will lose its capability of mirroring the sentiments of all who view it."

Admittedly, the court then concluded the State of Washington "improper use" statute (Wash.Rev.Code, § 9.86.020) was unconstitutional as applied because Spence, by nonmutilation of his own flag on his own property, was plainly and peaceably protesting the fact that his views were not endorsed by the government. See *Spence, supra.*

But, as aforesaid, Patricia Farrell's incendiary flag mutilating conduct does not approach the degree of tranquility attendant upon that denoted in *Spence.*

On the contrary, Farrell manifested a total disregard for the flag as a symbol of patriotism, and by the same token espoused disunity. See United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678–1679, 20 L.Ed.2d 672 (1968).

■ As aforesaid we are persuaded the State of Iowa has a substantial interest in preserving the flag of this Nation, and § 32.1, Code of Iowa, is to us sufficiently justified upon that basis. It furthers an important governmental interest unrelated to free expression and, as applied in the case now before us, any incidental restriction on First Amendment freedoms was no greater than essential to the furtherance of this State's interest in the protection of our national emblem.

For each and all of the reasons above set forth we again respectfully affirm on defendant Patricia Farrell's appeal to this court.

All Justices concur, except McCORMICK, J., who dissents.

McCORMICK, Justice (dissenting).

I adhere to the views expressed in my dissent in State v. Farrell, 209 N.W.2d 103 (Iowa 1973), and in my concurring opinion in State v. Kool, 212 N.W.2d 518 (Iowa 1973). I believe Spence v. Washington, 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842

(1974), demonstrates that the United States Supreme Court shares those views.

I. The parties in this case stipulated that the purpose of the demonstration was to protest the Indo-China War and the presence of R.O.T.C. on campus. The parties also agreed:

> "One member of the group was wearing as a cape a United States flag or replica thereof, approximately three feet by five feet in size. The flag was removed at the suggestion that it be burned in protest. The flag was passed to the center of the group until it came to the defendant who held it in front of her and off the ground while several other members of the group ignited it. As the flag burned, the group joined in singing 'The Star Spangled Banner'."

In the face of this stipulation I do not find any basis in the record for the majority's present skepticism regarding defendant's purpose in participating in the flagburning.

II. The majority opinion finds there was a "risk" of breach of the peace, after saying "risk" does not connote imminence. The opinion holds there only needs to be a "chance" of breach of the peace. In Tinker v. Des Moines Community School Dist., 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731, 739 (1969), the Supreme Court said, "But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble."

In State v. Kool, supra, 212 N.W.2d at 521, we added:

> "We must not water down the guaranties by undifferentiated fear or apprehension. For our part, we will uphold incursions upon symbolic expression on the basis of probable violence only when we are convinced that violence really is probable." (Italics added).

I am unable to reconcile the position taken by the court today with the constitutional standard delineated in Tinker, recognized in Kool, and confirmed in Spence.

III. The majority also finds the conviction of defendant serves a viable state interest in preserving the physical integrity of the flag as a symbol. In the previous opinion in this case the court observed this theory has been criticized by courts and legal commentators alike. State v. Farrell, supra, 209 N.W.2d at 106–107, and citations. In addition the Supreme Court in Spence rejected its applicability upon reasoning applicable here.

I believe the majority opinion misreads Spence in this respect. After saying what is quoted in Division IV of the majority opinion, the Spence court added:

> "But we need not decide in this case whether the interest advanced by the court below is valid. We assume arguendo that it is. The statute is nonetheless unconstitutional as applied to appellant's activity. There was no risk that appellant's acts would mislead viewers into assuming that the Government endorsed his viewpoint. To the contrary, he was plainly and peacefully protesting the fact that it did not. Appellant was not charged under the desecration statute, see n. 1 supra, nor did he permanently disfigure the flag or destroy it. He displayed it as a flag of his country in a way closely analogous to the manner in which flags have always been used to convey ideas. Moreover, his message was direct, likely to be understood, and within the contours of the First Amendment. Given the protected character of his expression and in light of the fact that no interest the State may have in preserving the physical integrity of a privately-owned flag was significantly impaired on these facts, the conviction must be invalidated." 94 S.Ct. at 2732, 41 L.Ed.2d at 849.

Significantly the court also said in a footnote to this text:

> "If this interest is valid, we note that it is directly related to expression in the context of activity like that undertaken by appellant. For that reason and be-

cause no other governmental interest unrelated to expression has been advanced or can be supported on this record, the four-step analysis of United States v. O'Brien, 391 U.S. 367, 377, 88 S.Ct. 1673–1679, 20 L.Ed.2d 672 (1968), is inapplicable."

Ibid. (footnote 8)

The court did not recognize the "unalloyed symbol" interest. It simply said that, even assuming it existed, it could not save the Washington statute as applied in that case.

It also put serious limitations on assertion of such an interest, giving special emphasis to the fact the use of the flag in protest is within the "spectrum of meanings" symbolized by it. Thus the court recognized a fundamental precept in our constitutional scheme, the right of a citizen to dissent from a policy of his government. The right to protest government policy is part of our patriotic tradition. The flag symbolizes this right when it embraces "the unity and diversity which are America." Id., 94 S.Ct. at 2732, 41 L.Ed.2d at 848.

In this case as in Spence there was no risk anyone would be misled into believing the expression was endorsed by the government. In addition, insofar as defendant's conduct was an expression of protest against government and university policy, the symbolism of the flag was unaffected. Spence recognizes that kind of expression is consistent with the flag's symbolism. It is only insofar as defendant's conduct also resulted in the termination of one flag's existence as a flag that the national symbol was affected. As in Spence, the flag here was privately owned.

In light of the holding in Spence, I would conclude that the projected interest of the State in preserving one privately-owned flag is not sufficient to override the protected character of defendant's expression.

IV. The majority opinion condemns defendant's conduct without regard to its communicative content. In fact it equates the conduct with the idea sought to be expressed. In doing so it makes contempt for government policy the equivalent of contempt for the flag. These are not equivalent ideas.

The message defendant conveyed in this case was the same as the message delivered in Kool and Spence. In all three cases the defendants sought to protest Indo-China war policies. It could be said in all three cases, as it was said in Spence:

"It may be noted, further, that this was not an act of mindless nihilism. Rather, it was a pointed expression of anguish by appellant about the then current domestic and foreign affairs of his government. An intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." 94 S.Ct. at 2730, 41 L.Ed.2d at 847.

The conduct must be judged in its context as a means of expression. In this context each use of the flag was intended to symbolize the government's alleged breach of faith with national ideals. The symbolic display in each case suggested that the government, not the protester, was dishonoring the flag. Spence teaches that the communicative content of this conduct is constitutionally protected free expression.

The issue is whether the State has demonstrated any substantial state interest threatened by the non-speech elements of that conduct so great as to override the right of free expression. The two interests suggested by the majority opinion, a mere possibility of breach of the peace and concern for the physical integrity of one privately-owned flag, fall far short of the Spence standard.

It is obvious that our flag desecration statute was unconstitutionally applied to defendant.

I would reverse the case.