## WILLIAMS *v.* STATE.

### (*Nashville.* February 23, 1893.)

1. GAMING. *Betting on horse-race run in another State.*

   It is gaming, and punishable as a misdemeanor, to bet, or to promote betting, within this State, upon a horse-race to be run in another State, where it is lawful to bet on such race.

   Code construed: § 5701 (M. & V.); § 4881 (T. & S.).

   Act construed: Acts 1891, Ch. 115.

   Case cited and approved: Ransome *v.* State, 91 Tenn., 716.

   Code construed: § 5802 (M. & V.); § 4974 (T. & S.).

2. SAME. *Same.*

   And the offense is consummated if the bet is commenced, and, *a fortiori*, if it is completed, within this State.

3. SAME. *Same.*

   And the bet is not only commenced, but completed, in this State, by the resident agent of a non-resident firm engaged in obtaining bets on horse-races to be run outside this State, who, without soliciting, receives a proposition to bet upon such race, wires it to his principal for acceptance or rejection, and, upon its acceptance, issues a ticket to the better, and receives and forwards the stake to his principal, and pays off the winner by draft upon his principal.

### FROM DAVIDSON.

Appeal from the Criminal Court of Davidson County. G. S. RIDLEY, Judge.

A. J. CALDWELL and VERTREES & VERTREES for Williams.

Attorney-general PICKLE for State.

WILKES, J. The three plaintiffs in error were each convicted on three separate presentments for gaming, the specific charges being unlawful betting, and encouraging and promoting unlawful betting, upon a horse-race run in the State of Kentucky. The cases were all heard together, before the Judge of the Criminal Court of Davidson County, without the intervention of a jury, and upon an agreed statement of facts. They were each found guilty in each case, and a fine was imposed in each case of $50. All have appealed.

The substance of the agreed state of facts, so far as material to be set out, is as follows: Defendant Williams is proprietor of the "Climax Saloon," in Nashville. Payne & Co. live in Kentucky, and their occupation and business is the placing of bets on horse-races, to be run at Latonia race-course, in Kentucky. They have the rear room of the saloon building rented, and a wire leased from the Western Union Telegraph Company connects it with Latonia. An operator is stationed at each place. In this room there is a blackboard, on which is written the names of the horses in the different races to be run, the weight each is to carry, the jockeys who are to ride them, and the odds which the book-makers at Latonia are laying against them.

Williams v. State.

Defendants McKay and Johnson are agents of Payne & Co., and attend to their business in this rented room. They receive propositions from any one offering to bet with Payne & Co., but solicit no propositions. The propositions, when offered, are telegraphed to Payne & Co., at Latonia, for acceptance or rejection. No propositions are entertained except upon actual races, and unless offered before the races come off. If Payne & Co. accept any proposition or offer to bet, they wire their Nashville agents to that effect. The Nashville agents thereupon receive the money which is offered to bet, and give to the party paying the same a ticket, which is the evidence, and contains the terms of the bet. The full amount of the bet is collected by the Nashville agents and remitted to Payne & Co. They also collect a commission for their services in forwarding the money. When the race is run at Latonia, the result is communicated by wire to the Nashville agents, and if the Nashville party has been successful, defendants, or one of them, draws a draft on Payne & Co., at Latonia, for the amount won, which the Nashville customer accepts in payment of his winnings. These drafts are collected in the usual course of trade. The Nashville agents act alone as agents of Payne & Co., receive a salary from them for their services, but have no interest in their business. The money received by the Nashville agents is regularly sent to Payne & Co., but not by telegraph, and settlement is made with them twice a week.

Defendant Williams has no interest in the business, but has been in the habit of cashing the drafts on Payne & Co. when presented at his saloon bar. He has also himself sent propositions to Payne & Co. to bet, which were accepted, and he has full knowledge of the character of the business conducted by Payne & Co. and by McKay and Johnson.

The contract made with the Western Union Telegraph Company by McKay and Johnson and Payne & Co. provides that no bet, or proposition to bet, in Davidson County shall be accepted in this room, but all shall be transmitted to Payne & Co. for acceptance on some track where it is lawful to bet on horse-races; and a violation of this provision terminates the lease of the wire. Many of the propositions made are rejected.

Latonia is a licensed race-track in Kentucky, and it is lawful, under the laws of that State, to bet on races on that track.

The contention is made that, under these facts, no bets are made in Tennessee, but all propositions to that effect are positively declined; that propositions to bet are merely sent to Payne & Co., in Kentucky, and, if accepted, the contract becomes complete there, upon the acceptance, where it is not gambling to make such contracts; and that the winnings are paid off in Kentucky.

Plaintiffs in error insist there is a broad difference between this case and the case of *Ransome* v. *The State*, 7 Pickle, 716.

Under the Code of Tennessee (M. & V.), § 5701, a bet on horse-racing is declared not to be gambling. This act was amended by Chapter 115, Acts of 1891, Section 1, so as to include trotting and pacing as well as running races.

Section 2 of the same Act provides "that it shall be unlawful gaming to bet or wager in any way upon any horse-race, unless the race-track upon which the race is run, trotted, or paced be inclosed by a substantial fence, and the bet or wager be made within said inclosure, upon a race to be run, trotted, or paced within said inclosure."

This Court, in *Ransome* v. *The State*, 7 Pickle, 716, held "that this Act only authorized betting on races *run in this State*, and within inclosures, and the betting must be done within the track inclosure." The object is to limit such gaming to the time and place where the race is being run. If the business done by defendants (say the Court in that case) is not gaming at the place where the money is put up on the race, but is to be held and treated as a bet made at the place to which the money is to be sent, and by the person for whom the agent acts, then there would be nothing unlawful in a "turf exchange" operating for principals on races run *without the State*, and thus gaming at all times, and on all races, run anywhere, would be licensed by resorting to the scheme shown by this evidence. The statute plainly intended to legalize betting done on a lawful track, and nowhere else.

It is said the present case differs from the Ransome case, because in this case no bet is made in Tennessee, no winnings are paid here, and there is nothing done here, except to forward a proposition to bet to Kentucky, which does not become a contract until accepted in Kentucky, where it is legitimate.

If this is as contended, still we cannot see that the case is taken out of the rule as to gambling contracts. Here a proposition is made in Tennessee to bet on a race to be run out of the State. This would be gambling if completed here. The commission of the offense is commenced in Tennessee, even if consummated in Kentucky, and, under the plain provisions of the Code, § 5802, the offender is guilty of the offense commenced.

But under the facts as agreed on in this case, we are of opinion that the contract was not intended to be completed in Kentucky, and was not in fact consummated there, nor until the Kentucky parties had wired their willingness to accept the bet to the Nashville agents, and until they had communicated this fact to the Nashville customer. Until this is done, no money is paid by the customer, no ticket is issued to him; and until these things are done, it was not intended that the contract should be completed, and without these final transactions the bet would not have been effectuated or closed.

The telegram from the Kentucky principals to the Nashville agents is nothing more than an

Williams *v.* State.

authority to the latter to close the deal on the terms proposed, and this closing of the deal is done in Nashville by the Nashville agents, after receipt of such authority from their Kentucky principals. The money to make the bet is then paid in Nashville, the ticket evidencing the contract is then signed and delivered, and the deal is completed there.

After the race is run, the winnings are paid in Tennessee, not in currency, it is true, but in a draft which the customer accepts as payment and treats as cash.

We are of opinion, therefore, that each of the defendants is guilty of illegal betting on races, not legalized by statute, and also guilty as aiders, abettors, and promoters of such illegal betting.

The judgments of the Court below will be affirmed with costs.