STATE of Iowa ex rel. Richard C. TURNER, Attorney General, and citizen of Polk County, Iowa, Appellant and Cross-Appellee,

v.

Harold and D. DRAKE and Hubert Herman Heinig, Appellees and Cross-Appellants.

No. 2–57127.

Supreme Court of Iowa.

May 19, 1976.

Richard C. Turner, Atty. Gen., and John R. Perkins, Asst. Atty. Gen., for appellant and cross-appellee.

Mark C. Smith, West Des Moines, for Hubert Herman Heinig.

Don F. Neiman, Des Moines, for Harold and D. Drake.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and REES, JJ.

LeGRAND, Justice.

This is an action brought upon the relation of Richard C. Turner to enjoin the maintenance of a gambling nuisance. The action is based upon a violation of § 726.6, The Code, 1973, which the petition alleges is a nuisance as defined in § 657.2(6), The Code, 1973. Plaintiff asserts defendants should be enjoined under § 99.1, The Code, 1973.

The trial court dismissed the action. We affirm, although we do so on other grounds.

The applicable statutory provisions are here set out in pertinent part:

§ 726.6 provides:

"Any person who records or registers bets or wagers or sells pools upon the results of any trial or contest of skill, speed, or power of endurance of man or beast, * * * and any person who keeps a place for the purpose of doing any such thing, and any owner, lessee, or occupant of any premises, who knowingly permits the same, or any part thereof, to be used for any such purpose, and anyone who, as custodian or depositary thereof, for hire or reward, receives any money, property, or thing of value staked, wagered, or bet upon any such result, shall be fined not exceeding one thousand dollars, or imprisoned in the county jail not exceeding one year, or both."

§ 657.2(6) provides:

"The following are nuisances:

"(1) * * *

"(2) * * *

"(3) * * *

"(4) * * *

"(5) * * *

"(6) houses of ill fame, kept for the purpose of prostitution and lewdness, gambling houses, or houses resorted to by persons using controlled substances, as defined in section 204.101, subsection 6, in violation of law, or houses where drunkenness, quarreling, fighting, or breaches of the peace are carried on or permitted to the disturbance of others.

"(7) * * *

"(8) * * *

"(9) * * * "

§ 99.1 provides:

"Whoever shall erect, establish, continue, maintain, use, own, or lease any building, erection, or place used for the purpose of lewdness, assignation, prostitution, or gambling, or pool selling as defined by section 726.6 is guilty of a nuisance, and the building, erection, or place, or the ground itself, in or upon which such lewdness, assignation, prostitution, or gambling, or pool selling as defined by section 726.6 is conducted, permitted, or carried on, continued, or exists, and the furniture, fixtures, musical instruments, and movable property used in conducting or maintaining such nuisance, are also declared a nuisance and shall be enjoined and abated as hereinafter provided."

This appeal has been submitted on stipulated facts. Defendants Harold and D. Drake are the owners of property at 124–5th Street in West Des Moines. They lease these premises to defendant, Heinig, who operates a tavern at that address. Heinig regularly patronized Ak-Sar-Ben racetrack in Omaha. As an accommodation, he placed bets there for persons who were not able to attend the races. On June 14, 1973, a Polk County deputy sheriff, after having been introduced to Heinig by an unidentified woman, gave him $5 to bet on a designated horse who was to run the next day at the Omaha track. The deputy wrote the number of the horse, the number of the race, and the amount he wanted to bet on a slip of paper which he gave to one of Heinig's employees. The employee in turn gave this data to Heinig. This is said to be

recording or registering a bet or wager. It is the only part of § 726.6 defendant is charged with violating.

On June 20, 1973, this same procedure was repeated as to other races. On the last occasion the deputy was accompanied by a fellow officer, who made the same arrangement with Heinig.

Two of the selections were winners. Each time Heinig paid the deputy the exact amount he had collected at the track. No compensation was paid Heinig for placing these bets at Ak-Sar-Ben. No commission was deducted by him from the amount paid on the winning ticket. The parties agree Heinig received nothing for placing and collecting the bets.

Defendants Drake owned the building in question. The unrefuted testimony shows they were unaware Heinig engaged in the practices which plaintiff says subject the property to the injunction now sought.

Heinig asserted generally his conduct did not violate § 726.6, The Code, 1973, and further claimed it came within the "social gambling" exception which appears as § 726.12 in the 1973 Code.

The trial court dismissed the action, finding Heinig's conduct came within § 726.12 as an exception to the gambling prohibited by § 726.6. The trial court also found defendant's actions would have been in violation of § 726.6 except for that exception.

We do not reach the "social gambling" question because we hold Heinig did not violate § 726.6 even without resorting to the provisions of § 726.12.

■ We hold Heinig did not register or record bets or wagers in any event. This case turns upon our construction of § 726.6. Although the present action is not a criminal prosecution, the statute is a criminal one imposing punishment by both fine and imprisonment. It is to be strictly construed. Sutherland Statutory Construction, § 59.08 (4th Ed., Sands, 1974); *State v. Kool*, 212 N.W.2d 518, 520 (Iowa 1973); *State v. Nelson*, 178 N.W.2d 434, 437 (Iowa 1970).

■ The statute contains no definition of "bet" or "wager." We therefore construe these words according to their approved usage. § 4.1(2), The Code; *State v. Kool, supra*, 212 N.W.2d at 520. For the present purposes we use "bet" and "wager" interchangeably. Plaintiff's case can succeed only upon proof Heinig either recorded or registered bets or wagers upon horse races to be ran at Ak-Sar-Ben as those terms are generally understood and applied.

Black's Law Dictionary, Revised 4th Ed., 1968, at page 203, defines "bet" as: "An agreement between two or more persons that a sum of money or other valuable thing, to which all jointly contribute, shall become the sole property of one or some of them on the happening in the future of an event at present uncertain, or according as a question disputed between them is settled in one way or the other."

2 Bouv.Law Dict. (8th Ed. [Rawle's Third Revision], 1914), p. 3414 contains this definition:

"Wager: a bet; a contract by which two or more agree that a certain sum * * shall be paid * * * to one of them on the happening or nonhappening of an uncertain event; * * * there must be a risk by both parties * * *; a bet is a wager, though a wager is not necessarily a bet."

Webster's New International Dictionary, 3d Ed. (1966), puts it this way:

"Bet: something that is * * * staked * * * typically between two parties, on * * * any contingent issue * * *"

The rule is thus stated in 38 Am.Jur.2d, Gambling, § 3, pages 108–109 (1968):

"The term 'bet' is defined as the hazard of money upon an incident by which one or both parties stand to win or lose by chance. Other definitions of slightly different wording but similar import may be found. Most of them are based on the premise that both or all parties to the bet shall stand to lose by the chance. According to some modern authorities, however, this is not essential to constitute gambling, but it is enough that one of

them stands to lose or win by such a chance."

A similar definition is found in 38 C.J.S. Gaming § 1c, page 43 (1943).

None of these definitions embraces Heinig's conduct. At best he recorded only *half* a bet—an offer to enter into a bet.

■ It seems unnecessary to point out a bet is not unilateral. A man does not bet against himself. Someone must take the other side of an uncertain event to give a bet meaning. A bet is an agreement to pay something of value upon the happening or non-happening of a specified contingent event. The fact the agreement is ordinarily unenforceable in Iowa as being against public policy does not affect the nature of the relationship.

When Heinig took the deputy's money and accepted a written notation of the purpose for which it was received there was no bet under any of the above definitions. From whom could the deputy have collected if nothing else had been done? Certainly not from the track; certainly not from Heinig. No authority has been cited and none has been found which holds the factual situation confronting us violates any gambling statute.

The authority relied on by the State does not support its position.

*State v. Mazzarella* (1967), 103 R.I. 253, 236 A.2d 446, 448 holds only that either party—the better or the one who takes the bet—may do the actual writing which becomes the record of the wager when accepted. But that case was premised on the making of a completed bet.

*Commonwealth v. Pasquale*, 334 Mass. 669, 671, 138 N.E.2d 204, 206 (1956), far from aiding the State, is in conflict with its position. There a cab driver was convicted of recording bets under a bookmaking statute similar to our § 726.6. He asserted error because the State's case included evidence he sometimes transported persons to race tracks and, when they were unable to attend, he placed bets for them. This is identical to Heinig's conduct. In affirming the conviction in *Pasquale*, the Massachusetts Supreme Court said:

> "The Commonwealth was not bound by evidence which it introduced to the effect that the defendant was in the habit of transporting patrons to race tracks, that frequently persons who could not visit the tracks gave him memoranda of bets which they wished placed by him at the pari-mutuel windows at the tracks, and that he stated the slip of paper in question had been received by him for that purpose * * * *It was for the jury to determine whether the bets recorded on the slip of paper had been registered with the defendant or delivered to him as agent to be placed at a race track.* The evidence was sufficient to warrant a verdict of guilty." (Emphasis added.)

We take the emphasized language to mean defendant would not have been guilty if the jury had accepted his version that the betting slips found in his possession were merely notations of bets he was to place at the track as agent for others.

In *Williams v. State*, 92 Tenn. 275, 21 S.W. 662 (1893), the court upheld the conviction of a professional gambler who sought to evade Tennessee's gambling laws by a complicated procedure of telegraphing bets from Tennessee to Kentucky, where such wagers were legal. The court held the bet was completed in Tennessee. The case depended upon the finding there was an actual bet made in that state. This is the circumstance lacking in this appeal.

■ We have found no conviction, nor indeed even a prosecution, under facts similar to those now before us. We hold defendant's conduct did not violate § 726.6, The Code, 1973, because he acted only as agent in accepting money and memoranda for bets to be placed at Ak-Sar-Ben. He neither registered nor recorded a bet under the stipulated facts. The result reached makes it unnecessary for us to consider the other issues raised on the appeal or cross-appeal.

AFFIRMED ON PLAINTIFF'S APPEAL; DEFENDANTS' CROSS–APPEAL DISMISSED.

MOORE, C. J., and MASON and REES, JJ., concur.

RAWLINGS, J., concurs specially.

RAWLINGS, Justice (concurring specially).

I concur in the result because it is to me evident plaintiff failed to show Heinig recorded or registered bets or wagers for hire or reward.